# Landy, Appellant, *v.* Philadelphia Life Insurance Company.

*Life insurance—Delivery of policy — Premium — Payment by company's agent—Violation of Act of July 12, 1913, P. L. 745.*

Where the application for life insurance, and the policy itself, expressly provide that acceptance of the policy and payment of the premium therefor are required before the policy shall become effective, no contract of insurance is established, where the company's agent tendered a policy, and a receipt for premium, but took them away with him because of nonpayment of the premium.

Testimony that the company's agent said that he had paid the premium, for the insured, is not sufficient to establish a payment and delivery, in the face of denial of any such statement by the agent. Such payment, if made, would constitute a violation of the provisions of the Act of July 12, 1913, P. L. 745, on the part of

both the agent and the representative of the insured, and the law will not aid in the enforcement of a contract which is in violation of a statute.

*Life insurance—Delivery of policy—Violation of express condition.*

A policy for life insurance which provides that it shall only take effect if delivered and accepted while the insured is "in good health" is of no effect, if delivered and accepted when the insured was at the point of death, and such fact was unknown to the insurer. As there can be no recovery on such a policy by a claimant whose evidence established such state of facts, the court below properly entered judgment for defendant non obstante veredicto.

Argued November 15, 1921. Appeal, No. 208, Oct. T., 1921, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1919, No. 5252, entering judgment for defendant non obstante veredicto in the case of Eliza C. Landy v. Philadelphia Life Insurance Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit on a policy of life insurance. Before PATTERSON, J.

The facts are stated in the opinion of the Superior Court.

The jury returned a verdict for plaintiff in the sum of $1,042.87. Subsequently the court on motion entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Errors assigned* were in not entering judgment on the verdict, and entering judgment non obstante veredicto.

*Michael J. O'Callaghan,* and with him *Thomas J. Norris,* for appellant.—Plaintiff, having proved the death and offered the policy and premium receipt in evidence, the burden of proving any affirmative defense, such as fraud, was on defendant: Suravitz v. Prudential Ins. Co., 261 Pa. 390.

Neither party can be permitted at trial to make a defense not set forth in the pleadings: Ruth Hastings Glass Tube Co. v. Slattery, 266 Pa. 288; Powers Buchanan Co. v. Powers, 269 Pa. 388.

The company could waive the stipulation of its contract as to prepayment of premium: Elkins v. The Insurance Co., 124 Pa. 484; Emanuel Co. v. G. S. Fire Ins. Co., 45 Pa. Superior Ct. 550; Ætna Life Ins. Co. v. Clark, 62 Pa. Superior Ct. 528.

*Russell Duane,* for appellee.—Plaintiff failed to prove a contract of insurance: Robb v. Miller's Mutual Fire Ins. Co., 230 Pa. 44.

Had there been such an agreement with the agent, as plaintiff sought to show, it would have been illegal and of no effect: Mechling v. Philadelphia Life Ins. Co., 53 Pa. Superior Ct. 526.

OPINION BY LINN, J., December 12, 1921:

Appellant got a verdict for the amount of a policy of insurance on her husband's life. The court entered judgment for defendant n. o. v., and she has appealed. The only question is whether she has shown a right to recover.

She averred in her statement of claim that pursuant to an application by her husband, designating her as beneficiary, for $2,000 insurance upon his life, the defendant "executed and delivered to the plaintiff, on the 22d of August, 1919, at Philadelphia, two certain policies of insurance upon [her husband's life] each for the sum of $1,000, numbered respectively 48127 and 48128, and both dated August 22, 1919, in consideration of the sum of $31.31 paid on that day by plaintiff to defendant." She also averred that her husband died on September 22, 1919, and that she furnished proper proofs of death, and otherwise performed all the policies required but that defendant paid only one policy and declined to pay policy No. 48128.

The affidavit of defense denied that policy 48128 "was delivered on August 22, 1919, and......that payment was then made therefor" and averred that plaintiff "fraudulently obtained delivery thereof on September 22, 1919, by representing to the company's agent that the insured was alive and well at the time, when as she well knew, though neither the company nor its said agent knew, he was at that moment lying at the point of death in the Misericordia Hospital, Philadelphia, with both legs cut off as the result of an accident......" Defendant also averred that both the application for the policy, and the policy itself provided that the latter should not be effective until "delivered and the premium paid thereon to the company or to an agent holding the premium receipt from the company during [insured's] lifetime and while in good health" and that the policy was "at no time in force."

In entering judgment n. o. v. the court made the following entry upon its records: "Plaintiff's action is based upon what was a violation of the provisions of the Act of July 12, 1913, P. L. 745."

To sustain her appeal, appellant contends (1) the violation of the act of assembly was not averred in the pleadings, and was therefore not available; and (2) the allegation that plaintiff fraudulently obtained the policy and premium receipt on September 22, 1919, was not proved.

Appellant's husband signed an application for insurance on the ordinary life plan, premiums payable quarterly. It provided, among other things, as follows: "I hereby agree for myself and all parties who may have an interest herein......that the policy granted herefor shall not take effect until issued, delivered and the premium paid thereon to the company or to an agent holding the premium receipt from the company during my lifetime and while in good health." It was dated August 4, 1919, and contained a provision that the insured would "accept the policy when issued."

Pursuant to the application, the company executed two policies dated August 22, 1919, for $1,000 each, and put them in course of delivery to the applicant. As the premium on one of these policies was duly paid to the company's agent at the time of delivery, and as that policy was paid by the company when proofs of loss were furnished in accordance with its provisions, our inquiry is confined to the other policy, the one in suit. It contains the following provision: "In consideration of the application for this policy and of the payment of Fifty-nine and 08/100 dollars in advance" the company insures the life, etc. It states that the premium may be paid quarterly. "All premiums are payable in advance at the home office of the company or to an agent of the company upon delivery of a receipt signed by an executive officer of the company—the president, a vice-president, secretary, treasurer, actuary or comptroller—and countersigned by said"........"A copy of the written and printed application for this contract is attached hereto. This policy and application therefor, taken together, constitute the entire contract. No person except an executive officer of the company as aforesaid, has power to modify or in the event of lapse to reinstate this policy, to extend the time for paying a premium, or to accept any note in payment thereof."

As the applicant had not paid the premium when he signed the application, but in it had agreed to accept the insurance if issued, it became the duty of the company when the policies were executed, to tender them to the applicant to enable him to determine whether they were in accord with the application. Under the evidence there could be no contract of insurance until the policy was accepted, for until then the applicant could decline to take it and had not become liable to pay premiums as specified in the policy; if he declined to accept the policy, the company had no claim for the premium because there had been no risk. Accordingly it was an important question, made in the pleadings, whether the

policy had been delivered. The policies were tendered to plaintiff in the absence of her husband. She now claims there was a delivery of both policies with a payment in advance by her of the premium for both as required by the policies, thereby making them effective on August 22d. Appellee contends that she accepted and paid the premium on but one policy; that both policies were tendered and were examined by plaintiff, acting for her husband; that she made no objection to the policy in suit, but stated she was unable then to accept it and pay the premium as required; that she therefore returned the policy and the premium receipt to the company's agent with the result that there was no delivery of that policy.

We shall first consider the case in the light of the evidence offered to support appellant's allegation that the policy was delivered to her and the quarterly premium paid by her on August 22d. She testified that on August 22, 1919, defendant's agent called upon her and "...... he handed me the two policies and the two receipts. I looked at both of them; I paid him for one and thanked him for the other, and thanked him for paying for it. In fact I said, 'Mr. Denman when I return from Wildwood I will pay you for the other policy,' and he put it in his pocket with the receipt. Q. He showed you both policies? A. He showed them both to me, not my husband, and he was well at the time. Q. He handed both policies to you? A. Yes, sir, to me, not my husband, my husband was not there, I received them for my husband. Q. You were the one he handed them to? A. Yes, sir. Q. You wanted to see what you were getting? A. Yes, sir, sure. Q. And you didn't want to pay out the money until you saw what you were getting? A. Sure. Q. He gave them to you to examine? A. Yes, sir. Q. He also gave you the receipt to examine didn't he? A. Yes, sir. Q. Then as I understand, you paid him that day $15.66 on August 22d? A. Yes, sir. Q. And the first receipt for policy number 1 we will call it, you kept. A. Yes,

sir.  Q. And the receipt for policy number 2 you handed back to him saying you would pay him later?  A. And the policy with it.  Q. You handed back the policy with it?  A. Yes, sir.  Q. So that when Mr. Denman left your house on August 22d you had in your possession policy number 1 with the receipt for that and he had in his possession and took away with him policy number 2 with the receipt for policy number 2?  A. Yes, sir.  Q. The policy and receipt that Mr. Denman took away with him on that date, they are the same policy and receipt offered in evidence in this case?  A. Yes, sir.  Q. And the same policy and receipt on which you are claiming to effect collection in this case?  A. Yes, sir."

Her attention being directed to her averment (quoted above) that she paid for both policies on August 22, 1919, she said: "A. Well, Mr. Denman told me he had paid the other $15.66 for me, that my husband was 65 years old and he would never get more insurance and he wanted me to take it on that date, the 22d of August, and I only had $15.60 to pay.  He said, 'Don't worry, Mrs. Landy, I have paid the other $15.60 for you, and here is your policy and your receipt, and you owe it to me and not to the Philadelphia Life Insurance Company......" ......"Q. In point of fact, the only money you paid was the $15.66?  A. $15.66 was all I had, he paid the other, he said."

Defendant's agents denied that they agreed to pay the premium on the policy in suit, or that they said they had paid it, and denied that anything of the kind occurred as stated by plaintiff except that she said she could only take one policy at the time and that she paid the premium on that, whereupon the other policy and premium receipt were returned to the defendant company by the agent.  Assuming the fact to be as appellant testified, and, laying aside the denial of defendant's agents, for the purposes of this review, it is clear the policy was not delivered on August 22, 1919.  The policy and premium receipt were handed back to the agent and were taken

away because she could not pay the premium; there was no manual tradition of the policy for the purpose of making it effective: Markey v. Mut. Ben. Ins. Co., 118 Mass. 178, at 193, 25 Cyc. 719; 14 R. C. L. 888, 889. The agents were justified in not delivering and in taking away the policy when it was not accepted by the payment of the premium as required by both the application and the policy.

Regarding appellant's assertion that one of the agents stated he had paid the premium for her,—that she owed it to him and not to his principal, it is sufficient to say that her testimony is no proof of payment by him. We all agree in the circumstances stated in the evidence, that the contention that the policy though carried away by the agent, was nevertheless in force from its date, could not be maintained because section 1 of the Act of July 12, 1913, P. L. 745, in effect at the time, prohibited an agent from giving any inducement to insurance or in connection therewith, which.is not specified in the policy, to any party or applicant for insurance, and in section 2 likewise made it is a misdemeanor for such party to accept or agree to accept such favor. In that view of her contention, appellant could not recover, because, to show payment of the premium—a payment necessary to make the contract effective—she must disclose and base her right to recover upon a transaction in which her conduct and the agent's are both expressly prohibited; the law will not aid her in such case: Vandegrift v. Vandegrift, 226 Pa. 254, 259, etc.; Pittsburgh v. Goshorn, 230 Pa. 212, 226, etc. There is no merit in the contention that the affidavit of defense should have alleged this illegality; there was nothing in the statement of claim to suggest recovery would be sought on such evidence. We have observed that the affidavit specially denied the policy "was delivered on August 22, 1919, and......that payment was then made therefor"; that denial was a challenge of lawful delivery and lawful payment as well as physical delivery. A defendant who is called upon to

file an affidavit of defense in reply to a statement of claim averring a right to recover apparently legal, need not anticipate that plaintiff will prove an illegal transaction.

We are then brought to the second branch of appellant's case. Considering the nondelivery of the policy on August 22d established by her evidence, and laying aside the alleged assertion of defendant's agent that he had paid the premium for appellant, we have the fact that she obtained delivery of the policy and premium receipt on September 22, 1919, by then paying the premium. She offered these in evidence to show her right to recover and she contends, that having also proved her husband's death, she was entitled to go to the jury. Her position is sound, unless the evidence in the case leaves no facts in dispute. As we have seen, the proposed contract with her husband provided that it should "not take effect until issued, delivered and the premium paid thereon to the company or to an agent holding the premium receipt from the company during my lifetime and while in good health." Appellant testified: "I tried to get in communication with Denman on the Saturday [September 20, 1919], my husband was injured. The Philadelphia Life was closed and Sunday came between. On Monday [September 22, 1919], I called up the Philadelphia Life and asked for Mr. Denman; they told me he had not arrived yet. I was not away from the 'phone two minutes when Mr. Denman called me and he said, 'Mrs. Landy, do you want to see me?' and I said, 'Yes.' He said, 'Do you want me to come down with the policy and receipt for you?' I said, 'Mr. Denman, that is what I want, but before you come down I want to ask you are you sure you paid for the second policy on August 22nd?' and he said, 'I am. You owe it to me, not to the Philadelphia Life, and you know that I showed you the receipt on August 22nd to that effect and I have still the receipt.' Then I said, 'Very well, come down with it,' and he came down, but he never asked me

how Mr. Landy was, where he was or anything about it; he was so crazy to get the money for the policy and receipt.    I had five dollars of my own and I went out into the kitchen to my sister-in-law and got the remaining amount, which was $15.66, and gave it to Mr. Denman and got possession of the policy and receipt." The proofs of death executed by her and contained in the record show that her husband was struck by a locomotive, and as a result of that accident, died in the Misericordia Hospital fifty-five hours after the accident; as he was injured on Saturday, September 20, 1919, he died Monday, September 22d, the day upon which she got possession of the policy and receipt. Those facts are as she stated them; there is no evidence to the contrary and of course a jury could not find them otherwise. It was therefore the duty of the court to declare the effect of the evidence. She proved that when the policy was delivered to her and the premium paid by her on September 22, 1919, her husband was not in "good health" and therefore that by the express terms of the policy and by the terms of her husband's application, the policy did not and could not "take effect." The premium paid on September 22d was tendered to appellant and the return of the policy was demanded as soon as defendant learned of the applicant's condition on September 22d.

The assignments of error are overruled and the judgment is affirmed.