## Bonacci v. Save Our Unborn Lives, Inc.

260

*Susan Cary Nicholas*, for plaintiff.
*Mary Alice Duffy* and *Jonathan Herbst*, for defendants.

BRADLEY, *P.J.*, July 9, 1979—

## I. FACTUAL BACKGROUND

In March 1977, plaintiff discovered that she was pregnant and decided to seek an abortion. Accord-

ing to the complaint, she telephoned the offices of defendant, Abortion, Birth Control & Pregnancy Testing Clinic (Clinic), listed in the Philadelphia telephone directory. Plaintiff spoke to an unidentified woman to whom she gave her name and address. The complaint states that plaintiff specifically requested that her parents, with whom she lived, not be told about her pregnancy. That night, two women, alleged to be agents of defendants, Clinic and Save Our Unborn Lives, Inc. (S.O.U.L.), appeared at plaintiff's residence and informed her parents that plaintiff was pregnant. The women also contacted a priest at plaintiff's church and informed him of plaintiff's pregnancy. Plaintiff alleges that as a result of these disclosures she has suffered embarrassment, humiliation, emotional distress and physical harm.

• • •

## III.  DEFENDANTS' AMENDED PRELIMINARY OBJECTIONS TO PLAINTIFF'S AMENDED COMPLAINT.

Objections 7, 8, 9, 10, 11, 12, 14, 15, 18, and 23 all pertain to plaintiff's assumpsit count brought under the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, as amended, 73 P.S. §201.1 et seq. Objection no. 11 argues that plaintiff has no standing to bring an action within the provisions of that act because the complaint fails to aver that plaintiff purchased or leased goods or services from defendants. Section 201-9.2(a) sets forth the circumstances under which a private litigant, as opposed to the Attorney General, may bring a cause of action under the act:

"§201-9.2 Private actions

"(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act,[1] may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper." (Footnote omitted.)

Plaintiff contends that this section should be read to include persons "who have actually entered or attempted to enter into a bargain or exchange with the defendant and have been injured thereby." The court cannot accept plaintiff's interpretation. The language of this section clearly requires a purchase or lease on the part of a prospective private litigant. Accordingly, objection no. 11 will be granted and count IV of the amended complaint dismissed. The remaining related objections therefore need not be decided and will be dismissed. It is noted that whether or not defendants have committed violations of the act which would subject them to prosecution by the Attorney General is an entirely different matter and not at issue in the instant private suit.

• • •

Defendants' objections 17(d), (f) through (p), (r), (s), (t) and (u) involve demurrers to plaintiff's five trespass counts. The standards for reviewing these objections were set forth in Gekas v. Shapp, 469 Pa. 1, 5, 364 A. 2d 691, 693 (1976):

"The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law . . . In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery . . . If there is any doubt, this should be resolved in favor of overruling the demurrer." See also Yeager v. Hogue, 2 P.C.R. 180, 185 (1979).

Since defendant has demurred to each of plaintiff's trespass counts, each must be examined pursuant to the above standards.

Plaintiff's first count is brought under section 46(1) of the Restatement, 2d, Torts. That section states: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

This section has been recognized in Pennsylvania. In Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Superior Ct. 377, 383, 385, 368 A. 2d 770, 773, 774 (1976), the Superior Court held that a demurrer to a section 46 action had been properly granted by the lower court. The Jones court stated: "It is apparent that the gravamen of this tort is that the conduct complained of must be of an extreme or outrageous type." The Jones court also set forth the standard by which a lower court must review a demurrer to a section 46 cause of action: ". . . it was the duty of the [lower] court to determine, in the first instance, whether the appellee's conduct could

reasonably be regarded as so extreme and outrageous as to permit recovery."

In this case, defendants, averred to be a "right to life group," held themselves out to be an abortion clinic. Plaintiff, a young pregnant woman, telephoned the Clinic seeking an abortion. In response to the Clinic's questioning, she supplied her name and address, specifically requesting that her parents not be told of her pregnancy. That evening two women from the Clinic visited plaintiff's residence and informed plaintiff's parents of her pregnancy. They also contacted plaintiff's church and informed one of the priests that plaintiff was pregnant. As a result, plaintiff suffered severe emotional distress. Accepting all of these facts as true, it cannot be said without doubt that defendants' conduct could not be reasonably regarded as extreme and outrageous. Quoting from Judge Hoffman's dissent in Jones: "At the very least, reasonable people may differ as to whether [defendants'] conduct has been sufficiently extreme and outrageous to result in liability." See also Yeager v. Hogue, 2 P.C.R. 180 (1979). Accordingly, defendants demurrer to count I must be denied.

The second count of plaintiff's complaint alleges a cause of action for fraudulent misrepresentation. The essential elements of such a cause of action are set forth in Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285, 285 A. 2d 451 (1971): "'. . . [T]here must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result.'"

Whether conditions (1) through (4) have been properly averred is immaterial since plaintiff has

failed to allege any damages which could possibly be the proximate result of defendants' alleged misrepresentation.

The alleged misrepresentation in this case is the defendants' holding themselves out as an abortion, birth control and pregnancy testing clinic when, in fact, they were a "pro-life" organization. Paragraph 43 of plaintiff's complaint, the only paragraph in which she sets forth damages under count II, states: "Plaintiff relied on Defendants' false and fraudulent representations and suffered extensive injury thereby *when defendants utilized such wrongfully obtained information to damage Plaintiff's family life and otherwise inflict both physical and mental harm upon her . . .*" (Emphasis supplied.)

Plaintiff has offered no facts to support the theory that the damage to plaintiff's family life and the physical and mental harm inflicted upon her were proximately caused by the defendants' holding themselves out as an abortion clinic. Rather, paragraph 43 alleges that these injuries resulted from defendants' *use* of the wrongfully obtained information.

"Proximate cause is designed not only to allow recovery for damages incurred because of another's act, but also to define such limits on recovery as are economically and socially desirable . . . It requires a showing of more than 'but for' causation in fact; it requires that the conduct in issue also be a 'substantial factor' in bringing about the harm." Klages v. General Ordnance Equipment Corp., 240 Pa. Superior Ct. 356, 373, 367 A. 2d 304, 313 (1976).

"With respect to the substantial factor requirement, the following considerations are important in determining whether conduct constitutes such a

factor: the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; whether the conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and lapse of time." *Wisniewski v. Great A. & P. Tea Co.*, 226 Pa. Superior Ct. 574, 582, 323 A. 2d 744 (1974).

The allegations of count II, even if proven, are insufficient as a matter of law to show that defendants' alleged misrepresentations were a "substantial factor" in bringing about the harm set forth in that count of plaintiff's complaint. It follows that plaintiff has not met the proximate damage requirement set forth in *Scaife Co. v. Rockwell-Standard Corp.*, supra. Accordingly, defendants' objection 17(g) will be granted, and count II of plaintiff's amended complaint will be dismissed.

The third and fourth counts of plaintiff's complaint allege causes of action for invasion of privacy: ". . . the action for invasion of privacy is actually comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light." *Marks v. Bell Telephone Co. of Pa.*, 460 Pa. 73, 85, 331 A. 2d 424, 430 (1975).

In the instant complaint, plaintiff seeks to establish intrusion upon her seclusion (count III) and publicity given to her private life (count IV). In *Vogel v. W. T. Grant Co.*, 458 Pa. 124, 130, 327 A. 2d 133 (1974), the Pennsylvania Supreme Court adopted the Restatement, 2d, Torts' definition of

the latter. "§652D. Publicity given to private life. One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy."

The Vogel court stated: "The crux of the tort developed in these cases and described in section 652D is publicity. Without it there is no actionable wrong."

Comment (a) to section 652D explains what is meant by "publicity":

"a. Publicity. The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. 'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used in §577 in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

"Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or

any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction in other words, is one between private and public communication."

The Vogel court quoted Dean Prosser on this issue: "'The disclosure . . . must be a public disclosure, and not a private one; there must be, in other words, publicity. It is an invasion of his rights to publish in a newspaper that the plaintiff does not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer or to any other individual, or even a small group . . . .'"

Defendant in Vogel had notified plaintiffs' relatives and employers of plaintiffs' overdue accounts. The court held that such conduct did not constitute an invasion of privacy: "[I]n these circumstances notification of two or four third parties is not sufficient to constitute publication. Without proof of publication, appellees have not established an actionable invasion of privacy."

Although the facts allegedly disclosed to third parties by defendants in the instant case are arguably more private than those disclosed in Vogel, plaintiff's allegations, even if true, would not establish publication as defined above. Accordingly, defendant's objection 17(p) will be granted and count IV of plaintiff's complaint dismissed.

As to plaintiff's claim of intrusion, no Pennsylvania appellate decisions have treated this cause of action specifically. However, as indicated above, the Pennsylvania Supreme Court in Marks v. Bell

Telephone Co. of Pa., supra, recognized this tort as one of the four comprising invasion of privacy as set forth in section 652 of the Restatement, 2d, Torts.

Section 652B of the Restatement, 2d, Torts, defines intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

Defendants object to plaintiff's cause of action arguing that it was plaintiff who phoned defendants, not vice versa; consequently, there could be no intrusion. Although plaintiff did phone defendants, defendants' alleged misrepresentation inducing plaintiff to phone must also be taken into account. Moreover, plaintiff's act of phoning would not act as a carte blanche to defendants to reveal the fact of plaintiff's pregnancy to her parents, especially in light of plaintiff's specific request for confidentiality. In addition, plaintiff has alleged that defendants' visit to her residence was itself an intrusion. Considering all of these factors, it cannot be said without doubt that no intrusion occurred.

It is unclear whether "highly offensive" under section 652B is equivalent to "extreme and outrageous" under section 46(1) of the Restatement, 2d, Torts, relating to intentional infliction of emotional distress. Certainly, whether a given intrusion is or is not "highly offensive" is for a factfinder to determine. In this case, plaintiff has alleged sufficient facts to require that the issue of "offensiveness" be submitted to a factfinder. Therefore, defendants' demurrer to count III will be dismissed.

Plaintiff's fifth and final count in trespass alleges a wrongful breach of confidentiality. Plaintiff as-

serts that defendants by holding themselves out as "health care providers" assumed a duty to plaintiff to keep all communications concerning plaintiff's physical condition confidential, and that their subsequent disclosure to plaintiff's parents and priest was a breach of that duty.

The threshold issue to be determined is the nature of the duty of confidentiality, if any, owed by defendants to plaintiff.

Although plaintiff does not explain what is meant by "health care providers," she does specifically allege that defendants held themselves out as an abortion clinic.

The Abortion Control Act of September 10, 1974, P.L. 639, 35 P.S. §6606(d), sets forth the informational data required to be obtained by abortion facilities in Pennsylvania. The data required includes the name and address of the patient and the name and address of her parents if she is under eighteen years of age. The last sentence of that section reads: "All information and documents required by this subsection shall be treated with confidentiality customarily accorded to medical records."

If defendants were actually an abortion clinic, they would clearly be subject to the duty of confidentiality "customarily accorded to medical records." Where an organization by falsely holding itself out to the public as such a clinic obtains information sought to be protected by the act, no less of a duty should attach. Accordingly, taking plaintiff's pleaded facts as true, defendants owed her the duty of confidentiality "customarily accorded to medical records."

That duty of confidentiality is not yet fully developed in Pennsylvania. The Act of June 7, 1907, P.L.

462, 28 P.S. §328, formerly prohibited disclosure by physicians in civil cases:

"§328. Physicians and surgeons not to disclose information; exception

"No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil cases, brought by such patient, for damages on account of personal injuries."

This section was recently repealed by the Judicial Code of April 28, 1978, P.L. 202. In its place, an almost identical statute, 42 Pa.C.S.A. §5929 (1978 ed.), was enacted:

"§5929. Physicians not to disclose information

"No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

These statutes are explicitly limited to testimony by physicians in civil matters. However, in In Re "B," 482 Pa. 471, 484, 394 A. 2d 419, 425 (1978), (per Manderino, J., with Roberts, J., concurring, and O'Brien, J., concurring in the result), Justice Manderino stated: "We conclude that in Pennsylvania, an individual's interest in preventing the

disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based."

Thus, at least with respect to psychologist-patient communications, there is recognized a constitutionally protected right against disclosure. Although In Re "B" was concerned with the rights of a juvenile prisoner, its application would seem to be justified in any case in which a constitutionally recognized zone of privacy, such as procreation, is at issue, especially in light of 35 P.S. §6606(d).

Based on these authorities it is not clear that defendants did not owe a duty of confidentiality to plaintiff. Accepting as true plaintiff's factual allegations as to defendants' breach of this duty, defendants' demurrer to this cause of action must be dismissed.

Summarizing defendants' objections in the nature of demurrers, the demurrers to count II, alleging fraudulent misrepresentation, and count IV, alleging publicity given to private life, will be granted. Defendants' remaining objections in the nature of demurrers will be denied.

• • •

## ORDER

And now, July 9, 1979, it is hereby ordered and decreed that:

(1) Plaintiff's motion to strike defendants' amended preliminary objection is denied.

(2) a. Defendants' amended preliminary objection no. 11 is granted and count VI of plaintiff's complaint is accordingly dismissed.

   b. Defendants' amended preliminary objection no. 17g is granted and count II of plaintiff's complaint is accordingly dismissed.

   c. Defendants' amended preliminary objection no. 17p is granted and count IV of plaintiff's complaint is accordingly dismissed.

   d. Defendants' remaining preliminary objections are dismissed.

   (3) Plaintiff's preliminary objections to defendants' amended preliminary objections are dismissed.