## Lauer v. McKean Corp.

*William R. Lauer,* for plaintiff.
*John R. Luke,* for defendant.

WETTICK, *A.J.,* June 12, 1989 — Defendants advertised "brand new Cadillac Allante" automobiles for $38,888 in the *Pittsburgh Press.* Plaintiff telephoned defendants and was informed that the offer applied to all three Cadillac Allante automobiles in defendants' inventory — one 1987 vehicle and two 1988 vehicles. Later that day plaintiff went to defendants' place of business and offered to buy one of the 1988 automobiles at the advertised sale price of $38,888. He was then advised that the advertisement applied only to a single vehicle that had been sold earlier and that the automobile which he sought would cost $46,888. He refused to purchase the vehicle at that price. Subsequently, he purchased a similar 1988 Cadillac Allante from another dealer for $44,572.65.

Count I of the complaint is based upon the Unfair Trade Practices and Consumer Protection Law. The facts as alleged in the complaint constitute numerous violations of this legislation and the Automotive Industry Trade Practice Regulations promulgated

thereunder. In this count plaintiff seeks to recover up to three times the difference between the price at which he purchased his automobile and the price at which defendants had initially offered to sell a similar vehicle.

Count II is based upon the Board of Vehicles Act. Plaintiff contends that these alleged actions of defendants constitute violations of this legislation for which plaintiff is entitled to the actual damages together with counsel fees and costs.

Defendant has filed preliminary objections in the nature of a demurrer.

## I

The circumstances under which a private person (as opposed to the Attorney General) may bring an action based upon the Unfair Trade Practices and Consumer Protection Law (Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §201.1 et seq.) are set forth in section 201-9.2(a) (73 P.S. §201-9.2) which reads as follows:

"(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or $100, whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than $100, and may provide such additional relief as it deems necessary or proper."

Defendants' argument in support of their preliminary objections as to count I is simple. Plaintiff did not purchase the automobile that is the subject of

the alleged bait and switch. The act permits a private action to be brought only by a person who "purchases" goods. Consequently, plaintiff lacks standing to bring a private action based on the Unfair Trade Practices and Consumer Protection Law.

Plaintiff contends that section 201-9.2 should not be read in such a narrow fashion. Since this legislation is a remedial act designed to protect consumers from virtually all fraudulent and deceptive trade practices, he argues that the legislature meant to include any person who sought to purchase or lease goods or services and was prevented from doing so because of the use of fraudulent and deceptive trade practices.

We reject this argument because it is apparent that section 201-9.2 was drafted for the purpose of excluding certain classes of consumers who were subjected to fraudulent or deceptive trade practices from bringing a private action. If the legislature had intended to permit any consumer who suffered an ascertainable loss of money or property as the result of fraudulent or deceptive trade practices to bring a private action, the act would have been worded in this fashion. The language that the legislature used is more restrictive.*

We could perhaps ignore this more restrictive language if we assumed that the use of this more restrictive language was an oversight on the part of

---

*In his brief, plaintiff directs our attention to Texas law. This reliance however is misplaced as the Texas Deceptive Trade Practices Act is far broader than Pennsylvania's. For example, under the Texas statute "'Consumer' means an individual . . . who *seeks* or acquires by purchase or lease, any goods or services . . . " V.T.C.A., Bus. & C. §17.45(4). (emphasis supplied) Furthermore, the right to bring an action is granted to "consumers." V.T.C.A. Bus. & C. §17-50.

the legislature. However, a private action is not the primary remedy for enforcing this legislation. The legislature relies primarily on actions by the attorney general for the enforcement on this legislation.

At the time this legislation was enacted, the legislature was very aware that merchants were engaging in practices similar to those alleged in plaintiff's complaint. In a great many instances, employment of these fraudulent and deceptive schemes does not result in a sale because the consumer recognizes what is occurring and does not do business with the merchant. Thus, in drafting provisions permitting private actions, one of the obvious questions that the legislature would have addressed is whether the consumer who did not complete the transaction would be entitled to bring a private action. The language selected by the legislature provides a clear answer. See generally, *Bonacci v. SOUL,* 11 D.&C. 3d 259 (1979); *Mason v. National Central Bank,* 19 D.&C. 3d 229 (1980).

Plaintiff also argues that he is a purchaser because he purchased a similar automobile from another dealer. We find no merit to this argument because it is apparent that section 201-9.2 permits a private action only by a person who purchased or leased goods from the merchant who engaged in fraudulent or deceptive trade practices. Either the legislature intended to require a purchase from the dealer who engaged in the fraudulent practices (as this court believes) or it intended to permit any consumer who sought to purchase goods or services to bring a private action (as plaintiff contends). The legislature could not have intended for the line to be drawn in any other manner. See *Mason v. National Central Bank, supra,* where the court said:

"The statute says that a person must purchase or lease goods and 'thereby' lose money or property,

based upon a deception or unfair practice. We consider that the loss must follow the purchase, and that the purchase itself must have been due to a deceptive practice." *Mason* at 232.

Count II of plaintiff's complaint is based on the Board of Vehicles Act (63 P.S. §818.1 et seq.) However, the section of this legislation (63 P.S. §818.9(d)) which plaintiff contends that defendants violated covers only the practice of increasing the selling price of the car above that originally quoted the purchaser "after the purchaser has signed a purchase order or contract which is subject to subsequent acceptance by the seller . . . " In the present case, plaintiff did not sign a purchase order. Consequently, he may not raise a claim based on 63 P.S. §818.9.

## ORDER OF COURT

Defendants' preliminary objections in the nature of a demurrer are sustained and both counts of plaintiff's complaint are dismissed as to both defendants.