

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2006

# Wise v. Amer Gen Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 05-2715

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wise v. Amer Gen Life Ins Co" (2006). *2006 Decisions.* Paper 504.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/504

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2715

———

DANIELLE WISE, individually and as ADMINISTRATRIX
OF THE ESTATE OF WILLIAM WISE,

Appellant

v.

AMERICAN GENERAL LIFE INSURANCE COMPANY,
INTELLIQUOTE INSURANCE SERVICES, GARY R.
LARDY

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-3711)
District Judge: Honorable Bruce W. Kauffman

———

Argued February 27, 2006
Before: SLOVITER, FUENTES, and BECKER,[*] Circuit Judges.

(Filed: August 21, 2006)

———

[*] This case was argued before the panel of Judges Sloviter, Fuentes, and Becker. Judge Becker died on May 19, 2006, before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

Richard L. Bazelon (Argued)
Natalie D'Amora
1515 Market Street, Suite 700
Philadelphia, PA 19102

ATTORNEYS FOR APPELLANT


Peter Jason (Argued)
Jonathan L. Swichar
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

James W. Gicking (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

ATTORNEYS FOR APPELLEES

———

OPINION OF THE COURT

———


FUENTES, Circuit Judge.

After receiving a quote from an internet website, William Wise applied for a life insurance policy from American General Life Insurance Company. American General approved the application and mailed Wise a policy on March 3, 2004. The policy provided that the policy year would begin on the date of issue, March 3, 2004, but that no coverage would be provided until the first premium was paid by Wise while he remained in good health. Wise died unexpectedly on March 10, 2004, the same day that he received the policy in the mail, and one week after the "date of issue" of the policy. His wife, Danielle Wise, mailed the first premium to American General the following day. We are asked to determine whether the life insurance policy was in effect at the

2

time of Wise's death.  Because, as of the date of Wise's death, Wise had not accepted the insurance contract by paying the premium, we conclude that the life insurance policy never took effect.

## I.  Factual and Procedural Background

In anticipation of the birth of his first child, William Wise ("Wise") used an internet website run by defendant Intelliquote Insurance Services ("Intelliquote") to research life insurance policies for himself in January 2004.  By entering personal information on the Intelliquote website, Wise was able to obtain quotes from several insurance carriers.  After comparing the annual premiums offered by each carrier, Wise selected an American General policy, and Intelliquote sent him an application.

The American General application mailed to Wise consisted of two parts.  Part A of the application required the applicant to disclose personal information for the purposes of obtaining a policy.  It also described, among other things, an option for a "Limited Temporary Life Insurance Agreement" ("Temporary Insurance").  (Appendix "App." at A107.)  The application stated that Temporary Insurance was available to the applicant only if 1) the full first modal premium was submitted with the application and 2) the applicant had not had certain health problems and was not more than seventy years old.[1]  (Id. at A105, A107.)  The application did not indicate the amount of the first premium payment.

Part A of the application also required Wise's signature acknowledging that he had read the application, that his statements

---

[1] The health problems that preclude an applicant from being eligible for Temporary Insurance are any past incidence of a heart attack, stroke, cancer, diabetes, or disorder of the immune system or if the applicant has, during the last two years, "been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed."  (Id. at 105.)  Wise indicated on his insurance application that he qualified for Temporary Insurance.  (Id.)

were true and complete, and that he understood that his application would be the basis of his policy. Wise was also asked to affirm that:

> **Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.**

(Id. at A107.) Part B required that Wise sign an identical statement after providing his medical history. (Id. at A46.) Wise completed the application, signed both statements, and returned it on or about February 7, 2004. Wise did not submit a premium payment with his application.

American General issued a life insurance policy to Wise on March 3, 2004, in the amount of $500,000. American General mailed the policy to Intelliquote, which in turn mailed the policy to Wise, who received the policy on March 10, 2004. The letter accompanying the policy stated, "[t]his policy is your contract and is for you to keep with other important documents." (Id. at A51.) The letter briefly described the policy and stated:

> *To place this coverage inforce [sic] the documents listed below need to be completed, signed, and returned:*
> - **Amount Due $600.00 (annual premium due)**
> - ***Check must be made payable to American General Life Insurance Company***
> - Delivery Receipt
>
> **All the above requirements must be in our office by March 26th, 2004.**

(Id.)

The first page of the policy stated that the policy was "a legal contract between the owner and American General." (Id. at

4

A53.) The policy stated that the entire contract consisted of the policy received by Wise on March 10th, any riders and endorsements, and the original application, along with any amendments or supplemental applications. (Id. at 158.) The policy bore a "date of issue" of March 3, 2004. (Id. at A55.) The date of issue was described as the date on which the policy year and all subsequent policy years would begin. (Id. at A57.) The policy explained that, with the exception of the first premium, all premiums not paid by the date of issue, March 3rd of each year, would be in default. (Id.) The policy also stated that the first premium was due on the date of issue and that insurance would "not take effect until that premium [was] paid." (Id.) Moreover, the policy stated that, "[t]he owner may return this policy to us at the above address or to the agent from whom it was purchased within thirty days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded." (Id. at 55.)

The day that Wise received his policy in the mail, he died suddenly and unexpectedly of a heart attack. His wife, Danielle Wise ("Plaintiff"), mailed the annual premium payment to American General the following day. When she requested the proceeds of the policy, American General denied her claim and returned her premium check. Plaintiff brings claims against American General for breach of contract and bad faith under 42 Pa. Cons. Stat. Ann. § 8371 (2005), and against American General, Intelliquote, and insurance agent Gary R. Lardy for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 et seq. (2005) (the "UTPCPL").[2]

The United States District Court for the Eastern District of

---

[2]Plaintiff originally filed suit in the Philadelphia Court of Common Pleas. The action was removed to the United States District Court for the Eastern District of Pennsylvania by American General and Intelliquote. The District Court exercised subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

5

Pennsylvania dismissed the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Wise v. Am. Gen. Life Ins. Co., No. 04-3711, 2005 WL 670697, at * 7 (E.D. Pa. Mar. 22, 2005). The District Court found that, taking all the facts alleged in the Complaint as true and making all inferences in favor of Plaintiff, there was no contract formed for insurance because "there is no indication in any of the documents of [American General's] intent to be bound prior to delivery of the policy, and no consideration was offered by [Wise] from which liability might be inferred up to that point." Id. at *3. The District Court determined that the life insurance policy unambiguously required the payment of the premium before any insurance coverage was to take effect, and that this provision was not waived by American General. Id. at *3-5. The District Court reasoned that, because Wise never accepted the offer of the policy by paying consideration in the form of the premium, there was no insurance in effect at the time of his death. Id. Based on this finding, the District Court dismissed all of Plaintiff's claims. Id. at *7. Plaintiff now appeals.

## II. Analysis

### A. There was no contractual obligation to provide coverage under the American General Policy

We must first determine whether American General was contractually obligated to provide life insurance coverage for Wise on the date of his death.[3] Under Pennsylvania law, the creation of an insurance contract requires an offer, an acceptance, and a meeting of the minds. See Moser Mfg. Co. v. Donegal & Conoy

---

[3] We exercise plenary review over the District Court's Rule 12(b)(6) dismissal. See Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434 (3d Cir. 2000) (citing Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 919 (3d Cir. 1999)). "In judging that dismissal, we take all the [plaintiffs'] factual allegations as true, and affirm only if it is certain that no relief can be granted under any set of facts which could be proved." Id. at 434-35 (internal quotation marks and citation omitted).

<u>Mut. Fire Ins. Co.</u>, 66 A.2d 581, 582 (Pa. 1949). Plaintiff argues that Wise's insurance application constituted an offer, which American General accepted as of March 3, 2004, by issuing the policy. Plaintiff argues that American General was therefore contractually obligated to provide insurance coverage to Wise as of the March 3, 2004 date of issue.

The application for insurance and the documents accompanying the policy explicitly stated that no coverage would be in effect until and unless Wise paid the premium while he remained in good health.[4] Under Pennsylvania law, this constitutes a valid requirement that must be fulfilled before coverage begins.[5] <u>See</u> <u>Landy v. Philadelphia Life Ins. Co.</u>, 78 Pa. Super. 47, 54 (1921); <u>see also</u> <u>Brodsky v. Equitable Life Assurance Soc'y of the U.S.</u>, No. 99-1218, 1999 WL 637221, at *1 (E.D. Pa. Aug. 20, 1999), <u>vacated on other grounds</u>, 1999 WL 755184 (E.D. Pa. Sept. 20, 1999); 44 <u>Corpus Juris Secundum Insurance</u> § 324 ("A stipulation or agreement by the company and applicant that a policy of life insurance shall not take effect or be binding on the company unless the first premium is paid while the applicant is alive or in good or sound health is valid and will be given effect according to its terms; it is a condition precedent to liability on the part of the company . . . ."). Neither party was bound by the insurance contract until Wise tendered the premium payment while in good health; Wise was free to turn down the policy, and American General was not obligated to provide insurance coverage. <u>See</u> <u>Landy</u>, 78 Pa. Super. at 56 (holding that, where life insurance policy stated it would only take effect when delivered and accepted through payment of premium while applicant was in

---

[4]As stated in the application and policy, and agreed by the parties, the insurance contract at issue consists of the application completed by Wise, all supporting documents, and the policy issued on March 3, 2004. <u>See</u> <u>Murray v. John Hancock Mut. Life Ins. Co.</u>, 69 A.2d 182, 183 (Pa. Super. 1949) (stating that, as general rule, insurance contract consists of both application and subsequently issued policy).

[5]The parties agree that Pennsylvania law applies to these issues.

good health, no coverage existed where applicant accepted while at brink of death); Brodsky, 1999 WL 637221, at *1 (finding no insurance coverage as matter of law where payment of premium was required for coverage to begin and applicant died before remitting first premium). Accordingly, because Wise did not fulfill the requirement of remitting the first premium payment while there was no change in his health, the insurance policy did not go into effect, and American General had no contractual obligation to provide insurance coverage to Wise upon his death.

Plaintiff contends that American General waived the requirement of the premium payment by making it impossible for Wise to comply with it. Plaintiff argues that, by mailing the policy on March 3, 2004, the date of issue, American General ensured that Wise could not receive the policy, pay the premium, and begin to receive coverage until after the date of issue. Under Pennsylvania law, "an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition." Fratto v. New Amsterdam Cas. Co., 252 A.2d 606, 607 (Pa. 1969) (quoting Arlotte v. Nat'l Liberty Ins. Co., 167 A. 295, 296 (Pa. 1933)).

Plaintiff's argument fails, however, because it relies on the flawed assumption that, for coverage to begin, the policy required payment of the premium by the March 3, 2004 date of issue. Nowhere does the policy state that the initial premium must be paid before the date of issue for coverage to take effect. To the contrary, the policy simply states that coverage will not begin until the applicant remits payment of the premium while he remains in good health. Although the initial premium is "due" on the date of issue, failure to pay the initial premium after the date of issue is not considered a default under the terms of the policy. Had Wise remained in good health and paid the policy upon its receipt on March 10, 2004, coverage would have taken effect on that date. Payment of the premium while Wise remained in good health was made impossible by Wise's unfortunate and untimely death rather than by the actions of American General. We therefore conclude that American General did not waive the requirement of payment of the first premium by making compliance impossible.

8

Plaintiff also contends that American General's practice of backdating its policies is inherently unfair because it results in the insured receiving less than a year's insurance in return for his annual premium. The practice of backdating a contract ensures that the recipient of the policy cannot fulfill the requirement of payment of the first premium until after the date of issue from which the policy year is measured. This results in a period during the policy year in which the insurer is not obligated to provide coverage to the insured. Plaintiff argues that this unfairness should be remedied by treating the insurance policy as if coverage began on the date of issue, March 3, 2004, resulting in Wise receiving a full year's insurance coverage in return for his annual premium.

We find no support under Pennsylvania law for the notion that backdating an insurance contract waives the requirement that the first premium must be paid before coverage begins. In Sydnor v. Metropolian Life Insurance Company, 26 Pa. Super. 521 (1904), the Pennsylvania Superior Court examined a life insurance contract dated March 31, 1902, which measured subsequent premium payments from that date, but which provided that there would be no coverage until the payment of the first premium. Id. at 522-23. The policy was not delivered to the insured's home until two days after the date of issue, and the first premium was not paid until three weeks after that. Id. at 522. The Sydnor court held that, once the first premium had been paid, the parties were bound by the terms of the contract, which provided that the policy year was to begin on March 31, 1902, and that all future premium payments would be measured from that date. Id. at 525. Moreover, the Sydnor court explicitly noted that if, as here, the insured died between the date of issue and the payment of the first premium, "there could have been no recovery upon the policy." Id.

Similarly, in McDonough v. Prudential Insurance Company of America, 85 Pa. Super. 63 (1924), the Pennsylvania Superior Court considered an insurance contract that was not effective until the first premium was paid while the applicant was in good health, but which was issued as of April 6, 1921, almost one month earlier. Id. at 66. The contract stated that the policy year was to be measured from April 6, 1921, and that premiums would be due on a semi-annual basis as measured from that date. Id. Relying on Sydnor, the McDonough court held that the policy was to be

9

enforced according to its terms, and that premiums were therefore due on April 6 and October 6 of each year, notwithstanding the fact that the contract did not go into effect until the first premium was paid on May 3, 1921. Id. at 67-68. Like the court in Sydnor, the McDonough court recognized that, until the first premium was paid, the insurer had no obligation to provide insurance coverage to the applicant. Id. at 67.

In Ford v. Fidelity Mutual Life Insurance Company, 170 A. 270 (Pa. 1934), the Pennsylvania Supreme Court relied on Sydnor and McDonough in holding that backdated contracts are not inherently unfair and should be enforced according to their explicit terms. Id. at 271. In Ford, the parties had signed an insurance contract with a February 10, 1931 date of issue, but which stated that the anniversary of the policy was February 7, 1931, and that all premium payments were to be measured from that date. Id. The Pennsylvania Supreme Court held that the terms of the contract were to be enforced, and that premiums were required to be paid on the named dates. Id. Ford relied on Sydnor's conclusion that backdated contracts should be enforced according to their terms, even where this results in the insured receiving no coverage between the date of issue and the payment of the first premium. Id.

Pennsylvania's enforcement of backdated contracts according to their terms is consistent with the practice of the majority of courts in other states that have considered the question of whether backdating is inherently unfair or fraudulent. Like the Pennsylvania Superior Court in Sydnor and McDonough, the majority of courts in other states have enforced the terms of backdated contracts even though this often results in a gap between the date of issue and the beginning of insurance coverage. See, e.g., Olsen v. Fed. Kemper Life Assurance Co., 700 P.2d 231, 233-35 (Or. 1985) (where remaining in good health was a requirement for insurance contract to become effective, no insurance contract was formed where plaintiff was diagnosed with terminal cancer before receiving contract and paying premium, even though policy was dated and premium calculated one day before plaintiff's diagnosis); Life Ins. Co. of Southwest v. Overstreet, 603 S.W.2d 780, 782-83 (Tex. 1980) (noting that antedated insurance contract with payment of the premium was required before insurance took effect was "enforceable as written notwithstanding the fact that the

10

first premium is paid . . . after it is 'due' and 'payable' . . . . This is the rule even though the insured obtains less than a full year's coverage for the first year's premium"); Boswell v. Gulf Life Ins. Co., 29 S.E.2d 71, 72-73 (Ga. 1944) (no liability where coverage conditioned upon receipt and acceptance and plaintiff died before receipt, even though date of issuance predated his death); Fawcett v. Sec. Benefit Ass'n, 104 P.2d 214, 219 (Utah 1940) (upholding backdated insurance contract even though insured obtained less than full month's insurance for first month due to delay in contract taking effect); Berry v. Prudential Ins. Co. of Am., 134 S.W.2d 886, 891-92 (Tenn. Ct. App. 1939) (insurance contract may be backdated to contain a period during which insurer assumes no risk); 44 A.L.R.2d 472 § 2 (2005) ("[I]n a large majority of the cases where the question has been considered, it has been held that the date stipulated in the policy as that from which premiums are to be calculated must be given effect, notwithstanding the provision that the coverage was not actually in force until a later date."). Thus, under the majority rule concerning the interpretation of backdated contracts, American General was under no obligation to provide insurance coverage for Wise, regardless of the fact that the date of issue preceded the date of Wise's death, because Wise did not fulfill the requirement of paying the first premium while in good health.[6]

---

[6] Moreover, even if Pennsylvania were to change its position to reject the practice of backdating, the states that have taken this minority view on backdating have held that the backdating on such contracts should be ignored, and that the policy year and all future premium payments should be construed as beginning no later than the date coverage takes effect upon the fulfillment of the requirement of acceptance and payment of the first premium. See Duerksen v. Brookings Int'l Life & Cas. Co., 166 N.W.2d 567, 569-71 (S.D. 1969); Guerin v. Cal. Western States Life Ins. Co., 40 Cal. Rptr. 344, 348 (Cal Dist. Ct. App. 1964); Carolina Life Ins. Co. v. DuPont, 141 So.2d 624, 626 (Fla. Dist. Ct. App. 1962); Lentin v. Cont'l Assurance Co., 105 N.E.2d 735, 738 (Ill. 1952); Columbian Nat'l Life Ins. Co. v. McClain, 174 P.2d 348, 350, 352 (Colo. 1946); Hampe v. Metro. Life Ins., 21 S.W.2d 926, 927-29 (Mo. Ct. App. 1929). Here, the minority rule would entail moving the date of issue to the date that Wise paid the first annual premium

Plaintiff next argues that we should follow the reasoning of the Fifth Circuit in <u>Monumental Life Insurance Company v. Hayes-Jenkins</u>, 403 F.3d 304 (5th Cir. 2005), which held that a material issue of fact existed as to whether an insurer that issued a backdated policy had waived the condition precedent of payment of the first premium. <u>Id.</u> at 311-12. In <u>Monumental</u>, a married couple received an unsolicited application for a Monumental Life Insurance Company ("Monumental") policy through their mortgage lender. <u>Id.</u> at 308. The application and accompanying brochure stated that when their certificate/insurance policy arrived, they would have thirty "risk free" days in which they could look it over, during which they would be "fully covered." <u>Id.</u> The application told them that if they chose to return the policy during that thirty-day period they would owe nothing. <u>Id.</u> It also assured the applicants that they would not be required to mail a separate check for their premium payments because their premiums would be automatically added to their mortgage bills. <u>Id.</u> However, the application also contained fine print that stated that their insurance would not be in effect until their first premium was paid. <u>Id.</u> at 310. The couple completed and mailed the application and, on March 14, 2001, they were informed that their policy had been approved. <u>Id.</u> at 309. On April 4, 2001, the husband died. The following day, the certificate/policy arrived in the mail. <u>Id.</u> The policy stated that it was effective as of April 1, 2001, three days before the husband's death. <u>Id.</u> The applicants were not billed for their first premium until their April mortgage bill was mailed on April 10, 2001, and they timely paid the bill two weeks later. <u>Id.</u> at 309-10.

The Fifth Circuit, applying Texas law, held that a material issue of fact existed as to whether Monumental had waived its right to insist on payment of the first premium as a condition precedent to coverage. <u>Id.</u> at 314-15. The Fifth Circuit stated that Monumental may have waived the condition precedent "when it unconditionally approved [the applicants'] application on March 14, 2001, with an April 1, 2001 effective date, <u>prior to receiving</u>

while in good health. Because Wise was unable to fulfill the requirement of payment of the first premium, no contract for insurance was formed under the minority rule.

[the applicants'] first premium payment directly, and in the full knowledge that–under its arrangement with [the mortgage holder]–[the applicants] could not possibly have been invoiced . . . for their first premium until sometime after April 9, 2001." Id. Plaintiff notes that, similarly, here American General approved Wise's application with a March 3, 2004 date of issue with full knowledge that, because it mailed the policy on the date of issue, Wise could not pay the first premium until after that date.

Unlike the insurer in Monumental, American General did not take action contradicting the requirement that the premium be paid before insurance coverage began. Monumental guaranteed that the applicants would receive thirty risk-free days of coverage beginning with their receipt of the insurance policy, and instructed the applicants not to send a premium check because the applicants would pay the premium with their monthly mortgage payment. Id. at 308. Monumental then made certain that the applicants could not pay the premium until after they received the insurance policy–well into the thirty days in which they were purportedly "fully covered." Id. at 309-10. Moreover, the insurance policy stated that insurance coverage commenced on April 1, 2001–well before the applicants received their April mortgage bill that included their first premium, directly contradicting the condition precedent stated on the application. Id. American General never promised insurance coverage before payment of the premium, and consistently informed Wise that coverage would not begin until the premium was paid. Regardless, to the extent that Monumental does stand for the proposition that backdating alone may waive the requirement of payment of the first premium by creating ambiguity as to when coverage takes effect, we find no support for this proposition under Pennsylvania law.

### B. Plaintiff's causes of action for breach of contract, bad faith, and violation of the UTPCPL

Because there was no contract for insurance as of Wise's death, Plaintiff's breach of contract claim must fail. Similarly, the District Court properly dismissed Plaintiff's claim under Pennsylvania's bad faith statute. A plaintiff bringing a claim under that statute must demonstrate that an insurer has acted in bad faith toward the insured through "any frivolous or unfounded refusal to

pay proceeds of a policy." <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 680, 688 (Pa. Super. 1994). Because there was no insurance policy in effect at the time of Wise's death, Plaintiff cannot establish a prima facie case under the bad faith statute. Plaintiff's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 <u>et seq.</u> (2005) (the "UTPCPL"), must also be dismissed because, as the District Court noted, only purchasers of goods may bring actions under that law. <u>See</u> <u>Lauer v. McKean Corp.</u>, 2 Pa. D. & C. 4th 394, 395-96 (Pa. Com. Pl. 1989); <u>Bonacci v. Save Our Unborn Lives, Inc.</u>, 11 Pa. D. & C. 3d 259, 262 (Pa. Com. Pl. 1979). A plaintiff who seeks to enter into a contract for purchase but fails to do so may not bring a claim under the UTPCPL, even where the plaintiff is prevented from making the purchase by the defendant's allegedly fraudulent conduct. <u>See</u> <u>Lauer</u>, 2 Pa. D. & C. 4th at 396. Because Wise never purchased a life insurance policy from American General, Plaintiff's UTPCPL was properly dismissed.

## III.  Conclusion

For the foregoing reasons, we affirm the District Court's dismissal of Plaintiff's complaint.

14