## UNITED FIDELITY LIFE INS. CO. v. HANDLEY.

### No. 3887.

Court of Civil Appeals of Texas. Amarillo.
Oct. 19, 1932.

Rehearing Denied Nov. 9, 1932.

834

Leake, Henry & Young, of Dallas, and J. I. Kilpatrick, of Lubbock, for appellant.

Bean & Klett, of Lubbock, and C. H. Cain, of Tahoka, for appellee.

HALL, C. J.

The appellee, as the widow of M. L. Handley, instituted this suit against appellant insurance company to recover upon a policy of life insurance which she alleges had been issued to her husband.

She alleges that on September 29, 1931, the local agent of the company mailed his check, drawn for the amount of the premium, to the company; that on September 30, 1931, her husband was killed, and that some time during the same day the policy sued upon was filled in and signed by an officer of the company, but was never actually mailed to or delivered to M. L. Handley; that said check for the premium was retained by the company until October 6th, and returned to the agent because the company received notice of the death of Handley, by reason of which facts a valid and binding contract of life insurance and double indemnity accident insurance was entered into between the applicant and the defendant, for the sum of $2,500 life insurance and the further sum of $2,500 double indemnity insurance.

She alleged in the alternative that the application for insurance made by her husband contained this provision: "If the first premium is paid when my application is taken and a policy issued as originally applied for, the insurance shall be effective as soon as my application is approved by the Company."

She further alleges that the premium was paid when the application was taken, and that said provision was intended by the parties to become binding upon defendant upon acceptance of the application and the issuance of the policy, even though the policy was never delivered.

She further pleads in the alternative that, if the contract of insurance did not become binding because of the nondelivery of the policy, nevertheless the defendant became bound and obligated by a valid contract to issue and deliver the policy; that it was still bound and obligated to do so, and she prays for judgment for the amount of the policy and in the alternative for damages for failure to deliver it.

The appellant answered by general and special exceptions, general denial, and denied that it had ever issued or delivered the policy sued upon; that the application of M. L. Handley contained a written statement that no money was paid to the defendant at the time of the execution of the application or at the time the same was sent to the company, and that by the terms of said application no insurance was in force upon his life because of his death prior to the issuance and delivery of the policy; that no policy was issued as originally applied for or at all; that there were various negotiations between the appellant and Handley, but no policy was ever issued or delivered to him during his lifetime and good health; that no agreement was made with him to deliver a policy, unless he should actually pay the premium therefor and should be alive and in good health at the time of said delivery; that, because he died prior to the issuance and delivery of the policy, appellant was not liable in any sum; that there was no meeting of the minds of the parties.

The case was tried to the court without a jury, and resulted in a judgment for plaintiff for $5,000, being the face of the policy, 12 per cent. penalty, and $1,000 attorneys' fees, with 6 per cent. interest, and all costs of suit.

The first three propositions are mere abstractions, but we have decided to consider them. The complaint under these propositions is that the appellant was denied a trial by a jury.

The bill of exceptions recites that, before the parties had announced ready for trial, and before appearance day of said cause, plaintiff paid a jury fee, which fact was noted on the judge's docket sheet; that the defendant filed its written demand for a jury before announcing ready, and tendered the sum of $5 as a jury fee, to the clerk.

The court overruled the appellant's demand for a jury, to which action the appellant excepted. The trial judge qualified the bill in part as follows: That plaintiff's original petition was filed December 15, 1931, and amended on January 26, 1932. That the term of the court following commenced February 15, 1932, and February 16th was appearance day. That prior to the term of the court defendant agreed to waive service of citation and filed its answer February 17th. Amended answer was filed on February 19th. That, when the appearance docket was called on the morning of February 16th, defendant did not appear by attorney or otherwise. That prior to the term of court one of the attorneys for appellee paid the clerk the jury fee of $5. That upon the call of the case, at the time the appearance docket was being sounded, plaintiff's attorney stated that the plaintiff did not desire a jury, and asked that the case be set for trial so that he could notify the defendant's attorney of the date of setting. That no application was ever made to the court by either party to have the case put on the jury docket, and the case was set for Thursday morning, February 18th. Defendant's attorney was wired, and in the afternoon of Tuesday defendant's attorney called plaintiff's attorney over long distance 'phone, and protested against being rushed into the trial, further stating that he might have to be in court at Dallas on Thursday, and insisted on additional time, saying he would try to be there either Friday or Saturday. After communicating with the court, the trial was set for Friday, and defendant's attorney was wired to that effect. That on the morning of February 19th defendant appeared and asked for a postponement until 1 o'clock p. m., which was granted. At the appointed hour, plaintiff announced ready, and defendant's attorney stated that defendant desired to postpone the case, and for the first time stated that defendant wanted a jury and wanted the case placed on the jury docket. The court's qualification further shows that Lynn county has two terms of district court each year, of four weeks each; that the first week was nonjury week, and the remaining three weeks were set for trial of jury cases. That the court had not disposed of much of the business on hand at the previous term. That the second and fourth weeks were set aside for trial of criminal cases, there being thirty or more of such cases to be tried during the two weeks. That some of them were murder cases. That there were also a number of civil cases for trial during the third week, which would probably consume the entire week, and that in the opinion of the trial judge announced from the bench a postponement of the case for trial before a jury would result in its continuance for the term.

R. S. art. 2125, provides that any party desiring to have his case tried by jury shall make an application therefor in open court on the first day of the term at which the suit is to be tried, unless the same be appearance day, in which event the application shall be made on default day.

■ It is conceded that the appellant made no effort to comply with the requirements of article 2125. The fact that one of appellee's counsel paid the jury fee prior to the opening of the term is of no consequence, since on the day when the statute requires a party to call for a jury her attorneys announced in open court that they did not desire a jury trial. It is true that, if appellant had known that appellee had applied for a jury, and for that reason appellant did not ask for one, appellee would be estopped from waiving her right to a jury on appearance day; but there is no element of estoppel in this case, and appellant seems not to have desired a jury until its counsel reached the court and found the condition of the docket. It has been held that the statute cited above is not mandatory, but that the trial judge, in the exercise of a sound discretion, may permit either party to call for a jury at a later date in the term, provided, however, it will result in no injustice to the other party and work a continuance of the case. The qualification appended to the bill of exception by the court shows that the granting of appellant's motion to have the case placed upon a jury docket would have resulted in a continuance. Having accepted the bill with this qualification, appellant is bound by it. Therefore no error is shown in this particular.

The material stipulations upon which the defense is based and around which this contest is waged are contained in the application, and are as follows:

"I agree * * * that if the first premium * * * be not paid to the agent at the time of making this application * * * the insurance shall not be effective until the policy is delivered to and accepted by me and the first premium thereon actually paid during my life time and good health."

"(b) If first premium is paid when my application is taken and the policy issued as originally applied for, the insurance shall be effective as soon as my application is approved by the Company."

From the letter of the appellant's Assistant Treasurer Weatherford, it appears that the life premium was $71.66, the double indemnity premium was $4.38, and the initial term premium was $5.83.

The material facts upon which a determina-

**836**

tion of the contentions urged under the fourth, fifth, and sixth propositions depend are uncontroverted. These facts we briefly state as follows: August 12, 1931, Major Lee Handley signed a written application addressed to the appellant company for a policy of insurance upon his life in the sum of $2,500 and the further sum of $2,500 double indemnity in case of accidental death. This application was mailed to and received by the company on August 14th, and contains the stipulations set out above. The application was not accepted when received, and on August 26th the medical director of the company wrote Fenton, its local agent at Tahoka, where the application had been signed, that a complete examination of the applicant would be necessary before the company would proceed further with the case, and that the applicant would have to go before a local physician at Tahoka for medical examination. Later, on the 26th day of September following, the assistant treasurer of the company wrote local agent Fenton that, as he [Fenton] had been previously advised, the risk committee of the company did not consider the applicant Handley a standard risk, but stated that the company had been able to secure coverage [reinsurance] with another company upon the basis of an extra premium of $10 per $1,000 for the first year on the $2,500 straight insurance; that, if a policy were issued, there would have to be a revision of the amount of the premium, as the premium was figured in the application made by the applicant, and further requested the agent to ascertain if the policy could be delivered on the basis of the premium outlined in the letter. Fenton had a conference with Handley, and on September 29th replied to the company's letter of September 26th, as follows: "Mr. Handley has consented to take this policy provided the extra rate of $10.00 per $1,000.00 is for only one year. He also does not think that you should charge him for the initial term premium as the time under the initial term has practically expired and he has had no protection. He thinks that you should change the date of his application and let the premiums mature annually from this date. I told him I would take this matter up with you but could not promise him what action you would take. I am enclosing check for $49.69 to cover the nets on $2,500.00. Do not issue extra policy as I cannot deliver it under the extra rate."

Fenton, the local agent, testified that he took the company's letter of September 26th to Handley, and submitted it to him, and "he said he would take it after I explained it to him." He further testified that the letter of September 29th, which he wrote to the company, stated the agreement he had with Handley with regard to the acceptance of the terms in the company's letter of September 26th.

■■ A proper construction of stipulation (b) quoted above is that it relates to initial term insurance which was to become effective as soon as the application was approved by the company, and the appellee insists that under this stipulation delivery of the policy before the death of Handley was not required. The appellant contends that the stipulation in the application to the effect that the insurance should not be effective until the policy was delivered and the first premium actually paid during the lifetime of the applicant is an effectual bar to the appellee's right to recover, because the first premium was not paid at the time the application was made. Appellant further insists that under said provision the delivery of the policy was necesary before the insurance became effective, because the uncontroverted testimony is that the policy was never delivered and never mailed to the appellant or the agent for delivery. We cannot assent to these propositions, and they are not sustained by the record. The original application had been received by the company more than a month before September 26th, and it is conceded that it was not accepted and no policy was issued thereon, because, as stated in the letter of that date, Handley was not a standard risk. But in that letter the company states that it has secured reinsurance with another company, provided an extra premium of $10 per $1,000 is paid for the first year on the $2,500 insurance applied for, and in the letter it is further proposed to issue the company's policy by allowing the agent 75 per cent. commission on the life premium, the usual commission on the double indemnity, 25 per cent. commission on the initial term premium, and no commission on the extra premium. The letter further requests the agent to ascertain if the policy can be delivered to Handley on the basis stated, and, if so, to remit "nets" to cover. Handley was consulted by the agent, and we construe the agent's letter of September 29th in reply to the company's letter of September 26th, as an acceptance of the proposition contained in the letter of September 26th, in so far as they applied to him. This construction is further sustained by the uncontradicted fact that the agent inclosed his check to the company for the "nets," which, in other words, was that part of the first premium due the company. It is true that the agent stated in his letter of September 29th that Handley consented to take the policy, provided the extra rate of $10 per $1,000 was for only one year. He paid that amount at that time to the agent, who accepted it, and the company's part of that $25 was included in the agent's check for $49.69, which the company received on the morning of September 30th. The agent further states that Handley "does not think" that he should be charged for the initial term premium, and further that "he thinks that you should change the

date of his application and let the premiums mature annually from this date." These are not counter proposals, and Handley did not make them conditions precedent to the formation of the contract, else he would not have paid the full amount on that date, and it is clear that the company did not consider them as counter proposals, because, upon receipt of the agent's letter of September 29th, containing the remittance of its share of the first premium, the company wrote up the policy, which was not delivered because only, as stated by the company's agent, notice of the death of Handley on September 30th had been received. Turner v. Riverside C. O. Co., 113 Tex. 143, 252 S. W. 1060, 1061; International Filter Co. v. Conroe Co. (Tex. Com. App.) 277 S. W. 631. The fact that the policy was written up ready to be delivered is a practical construction of the contract showing that its officers considered that the terms of insurance had been finally agreed upon, and that there was no further condition precedent to be complied with. We think the facts show that the contract had been completed, the premium paid, and that liability had attached, notwithstanding the fact that the policy was not delivered because notice of the death of Handley was received by the company before the policy was mailed either to the assured or to the agent. Amarillo National Life Insurance Co. v. Brown (Tex. Civ. App.) 166 S. W. 658; Liberty Life Insurance Co. v. Moore (Tex. Civ. App.) 10 S.W.(2d) 178; Pacific Mutual Life Insurance Co. v. Barton (C. C. A.) 50 F.(2d) 362. The agent testified with reference to the conversation he had with Handley after the receipt of the company's letter of September 26th: "We were talking about it and he [Handley] said it looked like they ought not to charge for initial term as it was getting late in the year and his premium would be due then. He said he would take it even if they did not strike it out." This is a clear and definite assent by Handley to all of the proposals made in the company's letter of September 26th.

This court held in Schubert v. McLain & McLain, 27 S.W.(2d) 846, 848, that the risk under a policy of insurance will be regarded as beginning with the commencement of the contract, citing 2 Cooley's Briefs on Insurance (2d Ed.) 1397, and said: "It may be stipulated in the application that the risk shall commence upon a day named therein and in such case the policy will cover a loss occurring before its issuance but after the day so named," quoting from 2 Cooley's Briefs on Insurance (2d Ed.) 1372.

It is true that the premium was not paid on August 12th when the application was first filled out and signed, and there was no contract until Handley had read the company's letter of September 26th, accepted the counter proposition made therein, and settled with the agent for the full amount of the initial term premium and the life premium, together with the $10 per $1,000 extra demanded by the company which reinsured the risk. The agent accepted Handley's settlement, and this record nowhere discloses any refusal on the part of the company to accept its agent's check for its "nets." The company did not base its refusal to deliver the policy after its issuance upon the ground that the premium had not been paid in accordance with the stipulation in the application but refused to deliver it for the sole reason that it had learned of the death of Handley before the policy had been mailed. This check the company received on September 30th and retained it until October 6th, before returning it to its agent. It was shown that the agent had money in the bank to pay the check which was mailed to the company, and that it would have been paid, if presented. The secretary of the home office admitted that the policy had been written up at the home office and was ready to be mailed to the agent when it received information of the death of the applicant. We think these facts show that the premium had been paid and accepted. They further show that Handley was ready to receive the policy when tendered to him, and, if necessary, to sign a second application drawn in accordance with the terms of the agreement evidenced by the company's letter of September 26th and the agent's reply on September 29th.

A cardinal maxim of equity is that equity regards and treats as done that which in fairness and good conscience ought to be done or should have been done. Applying it to the facts of this case, which are, briefly stated, the minds of the parties had met upon every term of the contract the consideration for the insurance had been paid to and received by the company, Handley was ready to accept the policy drawn in accordance with the agreed terms and to execute a new application, if necessary, equity therefore will require the company to deliver the policy, and will determine the rights of the parties as if this had been done.

Stipulation numbered (b) above, construed in the light of the other provisions of the policy, clearly provides that, as soon as Handley's application was approved by the company, the insurance would become effective, even though the policy should not be delivered. The annual term would begin when the policy was delivered, and subdivision (b) clearly provides that the insurance should become effective during the initial term, which, of course, expired when the annual term commenced, even though there was no delivery. The agent's check included the Company's part of the initial term, and, if it be admitted that Handley died before the annual term commenced, then the contract was complete and delivery was not necessary. American National Insurance Co. v. Blysard

(Tex. Civ. App.) 207 S. W. 162; Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 13 L. Ed. 187; Ætna Life Ins. Co. v. Dunken, 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 350. The stipulation in the application limiting liability to the time when the application was made and the first premium paid was for the benefit of the company, and could be waived by it, and clearly has been waived by accepting the premium at a later date and by the issuance of the policy. These facts are set up by the plaintiff, and constitute a waiver of that term of the contract.

We believe that a correct judgment has been entered, and it is affirmed.