**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 9, 2005**

Charles R. Fulbruge III
Clerk

**REVISED APRIL 20, 2005**
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-40930
_____

MONUMENTAL LIFE INSURANCE CO.,

Plaintiff-Counter Defendant-Appellee,

versus

SONDRA HAYES-JENKINS,

Defendant-Counter Claimant-Third Party Plaintiff-Appellant

ALVIN B. JENKINS, JR., Estate of

Defendant-Counter Claimant-Appellant

versus

NOVASTAR MORTGAGE

Third Party Defendant-Appellee.

----------------------
Appeal from the United States District Court for the Eastern
District of Texas, Sherman Division
(01-CV-297)
---------------------

BEFORE JONES, WIENER, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Appellant Sondra Hayes-Jenkins ("Sondra") appeals the district court's grant of summary judgment in favor of appellees Monumental Life Insurance Company ("MLIC") and NovaStar Mortgage ("NovaStar"). In MLIC's declaratory judgment action, the court held that Sondra was not entitled to benefits under MLIC's policy of mortgage life insurance and dismissed with prejudice her Texas state law claims

for breach of contract and negligence and for violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code. The district court also granted summary judgment to NovaStar, dismissing Sondra's third party claims against it. We affirm in part and reverse and remand in part.

## I. FACTS AND PROCEEDINGS

This dispute was precipitated by MLIC's denial of Sondra's demand that the proceeds of a mortgage life insurance policy issued by MLIC in connection with a home mortgage loan from NovaStar to Sondra and her now-deceased husband, Alvin Jenkins (collectively "the Jenkinses"), be applied to liquidate the remaining balance on that loan. MLIC refused thus to disburse the policy proceeds because the Jenkinses had failed to pay the first premium due on the policy prior to (1) its retroactively specified effective date (April 1, 2001) and (2) the date of Alvin's death (April 4, 2001). As far as they go, the discrete facts underlying this case are undisputed.

A.   The Mortgage Loan

The Jenkinses purchased a home in Frisco, Texas in November 2000. NovaStar, a residential mortgage lender, provided the purchase-money loan secured by a deed of trust that was a first mortgage lien on the property.[1] At the loan closing, the Jenkinses

---

[1] Presumably, the home became the Jenkinses' community property and each was jointly and severally liable on the purchase obligation.

executed a mortgage note, a Deed of Trust ("mortgage"), and an Impound Authorization Agreement and First Payment Notification ("escrow agreement"). The escrow agreement authorized NovaStar to collect and escrow funds from the Jenkinses "to pay for taxes, <u>insurance premiums</u>, assessments, or other items relating to the property on [their] behalf."[2] Consistent with the escrow agreement, NovaStar sent invoices to the Jenkinses in the amount of $2,808.70 each on or about the tenth day of each calendar month. In addition to the basic amount required to amortize principal and interest on the loan, the $2,808.70 included the estimated amount needed to cover property taxes and flood and fire insurance premiums on the encumbered property.

B.    The Mortgage Insurance Agreement

At all times pertinent to this case, NovaStar was party to a Mortgage Insurance Agreement with MLIC. This agreement obligated NovaStar to distribute "descriptive brochures and other promotional materials relating to [MLIC's] insurance coverages" to its borrowers. As consideration, NovaStar received a percentage of the premiums collected on any insurance written by MLIC for NovaStar's borrowers. The agreement also required NovaStar to facilitate the collection of premiums by including the amount of the premium in the insured borrower's monthly invoice. All MLIC brochures and promotional materials required to be distributed under the Mortgage

---

[2] Emphasis added.

3

Insurance Agreement by NovaStar to its borrowers were subject to NovaStar's prior written approval.

In January 2001, acting in accordance with its Mortgage Insurance Agreement with MLIC, NovaStar mailed the Jenkinses an unsolicited MLIC application ("the application") for Mortgage Life and Disability Insurance underwritten by MLIC. The MLIC application was mailed to the Jenkinses by a cover letter written on NovaStar's letterhead and was accompanied by a MLIC brochure describing the MLIC policy.

C.   Cover Letter

In the cover letter, NovaStar informed the Jenkinses that the mortgage life insurance policy would pay off their entire mortgage balance "up to $300,000" in the event of the death of either of them. The cover letter also promised the Jenkinses a thirty-day "risk free" period, commencing on the date they received their Certificate of Insurance/policy, during which period they would be allowed to examine the policy without cost or obligation:

> This insurance is yours to try risk free. We're confident that you'll agree that [the insurance] provides essential protection. Examine the Certificate of Insurance for 30 days at no cost or obligation. If you decide you don't want the coverage, for any reason, just return the Certificate to Monumental Life Insurance Company and you'll **[future tense]** owe nothing.

D.   Brochure

The accompanying MLIC brochure touted the advantages of the thirty-day "risk free" period, stating in bold print:

4

> **Examine at No Risk for 30 Days. When your certificate/policy arrives, look it over. If you don't agree that this is sensible and affordable mortgage protection, simply return it within 30 days of receiving it . . . and you won't** [future tense] **owe a cent. No questions asked. In the meantime, you'll** [future tense] **be fully covered while you make your decision.**

In addition to explaining the thirty-day examination period, MLIC's brochure emphasized that the Jenkinses would not be required to mail a separate check for their premium payments to either MLIC or NovaStar. The brochure promised the applicants that "[t]here are no checks to write" and that their "insurance premium [would be] conveniently added to [their] monthly mortgage payments."

E.   Application

The application reiterated these same assurances and added that, should the Jenkinses decide to return the policy within the thirty-day examination period, their "account will be credited in full," presumably referring to their NovaStar account as they had none with MLIC. The application further guaranteed the Jenkinses that they would be "fully covered" by the insurance policy during the thirty-day period while they examined the policy.

F.   The Jenkinses' Response

Sondra and Alvin promptly completed the application and mailed it, as directed, to MLIC, where it was received on January 17, 2001. Relying on the MLIC brochure's assurances that no separate check would be required and that their premiums would be added to and included in their monthly invoices from NovaStar, as well as

5

the assurances that they would "owe nothing" if they returned the certificate/policy during the 30-day examination period (during which they would nonetheless be covered), the Jenkinses neither enclosed a check for their first insurance premium when they mailed their application to MLIC nor unilaterally added the amount of this first premium to their payments of any of NovaStar's subsequent monthly invoices. As they had done each month since taking out their loan, the Jenkinses mailed their check in payment of NovaStar's March 10, 2001 on March 25, 2001, in the standard invoiced amount of $2,808.70.

G.   Notice of Approval

On March 14, 2001 —— after NovaStar had mailed its March 10th invoice to the Jenkinses and before they mailed their March 25th payment of that invoice to NovaStar —— MLIC mailed a letter to the Jenkinses informing them that it had approved their application and that their "certificate of Mortgage Life Insurance should arrive shortly." There was no mention of the first-premium requirement anywhere in this notice; neither did MLIC notify NovaStar that the Jenkinses' application had been approved. This is because MLIC's arrangement with NovaStar specified that MLIC need only notify NovaStar of newly approved insureds once per month, by the ninth day of each calendar month.

Alvin died unexpectedly on April 4, 2001. The following day, April 5, 2001, Sondra received the MLIC Certificate of Insurance and policy in the mail. The Policy Schedule specified that the

6

insurance was effective April 1, 2001, three days prior to Alvin's death.  No notice of Alvin's death was furnished to either MLIC or NovaStar.

H.    The Policy

The cover page of the policy made clear that coverage was provided "[i]n consideration of your application and payment of the first premium."[3]  Consistent with this statement but contradictory to the above-quoted future-tense assurances in NovaStar's cover letter and MLIC's brochure, the cover page also contained the following language in bold print:

> **Thirty day right to examine policy.  If you are not satisfied for any reason, you may return this policy within 30 days after receipt.  Your premium will be refunded.**

Immediately following this, a third statement on the cover page informed the insureds that coverage had begun "on the Effective Date of Insurance as shown on the Schedule of this Policy."  And, as noted, the Schedule specified April 1, 2001 as the effective date of insurance, and thus the date on which coverage commenced.

On April 9, 2001 —— eight days after the policy's effective date, four days after the MLIC policy was delivered by mail to Sondra, and five days after Alvin's death —— MLIC informed NovaStar for the first time that the Jenkinses' application had been approved.  The following day, April 10, 2001, NovaStar mailed the

---

[3] Emphasis added.

7

April invoice to the Jenkinses.  For the first time, the Jenkinses' monthly invoice (which Sondra timely paid on April 26, 2001) included the amount of the premium for the MLIC policy.

In May 2001, Sondra timely filed a claim with MLIC for benefits under the policy.  MLIC immediately denied her claim, asserting that no insurance was in effect at the time of Alvin's death.  In so doing, MLIC cited language in the "Premiums" section of the <u>policy</u> (which the Jenkinses had never seen before it was delivered to Sondra four days <u>after</u> the effective date and one day <u>after</u> Alvin's death) that required the Jenkinses to pay their first premium "before the Effective Date of Insurance."  MLIC asserted its position that, because the Jenkinses had not paid their first premium by either the April 1, 2001 effective date of the policy or the April 4, 2001 date of Alvin's death, the policy was not in effect at the time of Alvin's death.  In addition, MLIC pointed out that the application contained a statement (in fine print in the paragraph immediately above the applicant's signature line) that specified:

> [N]o insurance is in effect unless the application
> is approved by the Insurance Company, and the first
> premium is paid.

MLIC then filed a declaratory judgment action in the district court seeking a holding that no MLIC insurance covered the Jenkinses at the time of Alvin's death and that Sondra is not entitled to benefits under the policy in question.  Sondra answered the complaint and filed a counterclaim against MLIC alleging (1)

8

breach of the insurance contract, (2) negligence, (3) negligent misrepresentation, and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA") and Texas Insurance Code. She also filed a third party complaint against NovaStar, asserting claims for (1) breach of the escrow agreement, (2) negligence, (3) negligent misrepresentation, and (4) violations of the DTPA and Insurance Code.[4]

MLIC and NovaStar separately filed motions for summary judgment. In January 2003, the district court granted summary judgment in favor of MLIC and NovaStar, holding that Sondra was not entitled to benefits under the MLIC policy and dismissing all her counterclaims claims and third party claims with prejudice. Final judgment was entered in June 2003, and Sondra timely filed a notice of appeal.

## II. ANALYSIS

A. Standard of Review

We review de novo a district court's grant of summary judgment.[5]

B. MLIC's Breach of Contract

---

[4] Sondra has abandoned her claims against MLIC for negligence and negligent misrepresentation and her claim against NovaStar for negligent misrepresentation by failing to brief these claims on appeal. See Sepulvado v. CSC Credit Servs., 158 F.3d 890, 897 n.7(5th Cir. 1998)(claims not briefed on appeal are considered abandoned).

[5] See Markos v. City of Atlanta, 364 F.3d 567, 570 (5th Cir. 2004).

As a general rule, "[t]he payment of the premium in accordance with the provisions of an insurance policy is a condition precedent to the establishment of liability of the insurer."[6]  On appeal, MLIC argues that the Jenkinses' failure to pay the first premium prior to either the April 1, 2001 effective date of the policy or the April 4, 2001 date of Alvin's death is legally conclusive that no contract of insurance capable of being breached was in effect at the time of Alvin's death.  In response, Sondra asserts that MLIC either waived its right to assert prepayment of the first premium as a condition precedent to commencement of coverage, or is estopped from doing so, by virtue of misrepresentations in the cover letter, brochure, application, and approval letter regarding what was required on the part of the Jenkinses to bring coverage into effect.  Sondra also contends that, as MLIC's agent for collection of premiums, NovaStar was negligent in failing to collect and remit her first premium prior to the April 1, 2001 effective date of the policy, thereby vicariously estopping its principal, MLIC, from asserting prepayment of the first premium as grounds for withholding the policy's proceeds.  As Sondra's assertion of both waiver and estoppel based on MLIC's own words and

---

[6] Walker v. Fed. Kemper Life Assurance Co., 828 S.W.2d 442, 449 (Tex. App. —— San Antonio 1992, reh. d.).

10

conduct has facial merit, we remand to the district court for full fact-finding on these claims.[7]

    1.    <u>Equitable Estoppel</u>

Generally, Texas law defines estoppel as "conduct which causes the other party to materially alter his position in reliance on that conduct."[8] The elements of equitable estoppel are: "(1) A false representation or concealment of material facts made with knowledge (actual or constructive) of those facts, (2) with intention that it should be acted on, (3) to a party without knowledge, or means of knowledge of those facts, (4) who detrimentally relied upon those representations."[9]

MLIC contends that Sondra has failed to raise a genuine issue of material fact as to the fourth element of equitable estoppel because she cannot show that she relied on MLIC's post hoc notification that coverage had commenced on April 1, 2001. To this end, MLIC emphasizes that both the application and the approval letter are silent as to when the insurance would become effective,

---

[7] As we remand to the district court on the direct issues of waiver and estoppel, we also remand on the issue of estoppel grounded in respondeat superior. This is because, on the undeveloped summary judgment record before us, there could exist a situation in which MLIC is not liable to Sondra by virtue of its own actions but is vicariously liable by virtue of those of NovaStar. We forgo discussion of the issue here for the reasons stated below. <u>See infra</u> note 22.

[8] <u>Braugh v. Phillips</u>, 557 S.W.2d 155, 158 (Tex. App. — Corpus Christi 1977, reh. d.).

[9] <u>Robinson v. Robinson</u>, 961 S.W.2d 292, 231 (Tex. App. — Houston [1st Dist.] 1997).

11

and that the only representation that coverage commenced on April 1, 2001 is contained in the policy itself, which Sondra did not receive until April 5, 2001.  We find that the following evidence raises a genuine issue of material fact, however, as to whether the Jenkinses detrimentally relied on MLIC's representations as to when coverage under the policy would begin.

Sondra has shown prima facie that she and Alvin might have relied —— reasonably and to their detriment —— on MLIC's earlier representations in the brochure, the application, and the approval letter, and Nova Star's representations in the cover letter, about the requirements to bring coverage into effect before Alvin's death on April 4.  Of particular importance are the representations in these materials that relate to the 30-day "no risk" examination period.  These representations, contained not only in the cover letter and brochure but also highlighted in bold print at the top of the application, state affirmatively that the Jenkinses will be "fully covered" for 30 days while they "look over" their policy yet omit any reference to the fact on which MLIC now relies —— that coverage will become effective only on MLIC's receipt of the first premium payment.

In fact, the only references to the requirement that the prospective insured pay the first premium before the effective date of the policy in any of the promotional materials sent to the Jenkinses are (1) the inferences to be drawn from the statement in the application that the Jenkinses' account will be "credited in

full" if they elect to return the policy within the 30-day examination period and (2) the statement in fine print above the applicant's signature line that "no insurance is in effect unless the application is approved by the Insurance Company and the first premium is paid." When viewed in the context of MLIC's repeated emphasis that the 30-day period was "no risk" and the assurance that "there are no checks to write," these disclaimers may not have been sufficient in themselves to place an applicant on notice that payment of the first premium is a condition precedent to coverage.

MLIC's contentions are even more troubling when considered in light of the fact that the completion instructions to potential applicants do not recommend, much less expressly require, that the applicant remit the first premium payment directly to MLIC with the application. Rather, MLIC's solicitations instruct the applicant merely to (1) "[i]ndicate the type of insurance desired;" (2) "[d]etermine [the] premium based on the rates shown on the reverse side [of the application];" and (3) "[c]omplete, sign, and return your application today." There is no mention whatsoever of remitting the initial premium, much less when, where, or to whom the applicant should deliver the first premium payment.

The instructions in the application go on to state that once MLIC approves the application, the applicants' "[c]ertificate/[p]olicy will be issued and [the] premium will be

13

<u>added</u> to [the applicant's] <u>monthly mortgage payment</u>."[10] Significantly, this instruction does not state that the applicant must do the adding. A factfinder could thus reasonably conclude that NovaStar — rather than the applicant — would be the one to perform the "adding" function and that no further act will be required on the part of the applicant.[11] That this is a reasonable reading from the viewpoint of an applicant is fostered by the advice given to the applicant that no additional check will be required. Yet only by preparing and remitting a separate check could the Jenkinses have paid the first premium (1) before the effective date selected unilaterally by MLIC alone, or (2) before Alvin's death.

Likewise, MLIC's March 14, 2001 letter, which formally notified the Jenkinses that their application had been approved, is devoid of any admonition that coverage is conditioned on their prior payment of the first premium. Like the application itself, this notice's terse congratulatory statement, which informed the Jenkinses that their Certificate of Insurance/Policy would "arrive shortly," could have implied to the Jenkinses that, by completing and mailing their application to MLIC months earlier, they had successfully completed all acts required on their part to bring coverage into effect.

---

[10] Emphasis added.

[11] Indeed, NovaStar did just that, adding that amount of the MLIC monthly payment to the Jenkinses' mortgage invoice for April.

14

Neither does MLIC's argument that the Jenkinses were somehow remiss in not sending a separate check to MLIC or NovaStar for their mortgage life insurance premium or in not adding the amount of their premium to their March invoice from NovaStar entitle it to summary judgment. Not only do the instructions quoted above tell the Jenkinses that their premium "will be added" to the monthly mortgage payment (not that they must do the adding), but (1) the brochure guarantees that "[t]here are no checks to write," because the "insurance premium [will be] conveniently added to [the] monthly mortgage payment," and (2) the application itself contains the applicants' express authorization for "the <u>lender</u> [NovaStar] to add the premium for the Mortgage Insurance indicated above to [the Jenkinses'] mortgage payment."[12]

Taken together and considered in combination, these statements could lead an applicant to assume that MLIC did not make it incumbent on them, as NovaStar's borrowers, to mail a separate check for their premium or, absent an invoice, to add the amount of their premium to their payment to NovaStar for the month in which MLIC's approval letter is received. The same is true as to any requirement that a check for the first premium must be sent directly to MLIC <u>after</u> it approved the application and <u>before</u> coverage (and the 30-day risk-free period) would begin. Based on the totality of these writings, any reasonable applicant could

---

[12] Emphasis added.

justifiably conclude that separately and independently paying the first premium <u>before</u> coverage would become effective was simply not required.

Obviously, the Jenkinses did not rely on coverage commencing specifically on April 1, 2001 because MLIC did not communicate that date to them until April 5. That contention by MLIC is a red herring. The record contains ample evidence that the Jenkinses could have reasonably relied on (1) MLIC's representation that nothing more than completing their application and mailing it to MLIC was required on their part to bring coverage into effect once it was approved by MLIC, and (2) MLIC's failure to communicate clearly and unambiguously that payment of the first premium was a condition precedent to coverage. Accordingly, we conclude that genuine issues of material fact exist as to whether the Jenkinses relied on MLIC's representations to their detriment. We thus remand this issue to the district court.

2.    <u>Waiver</u>

Under Texas law, "<u>waiver</u> <u>is</u> a voluntary, intentional relinquishment of a known right or <u>intentional</u> <u>conduct</u> <u>inconsistent</u> <u>with</u> <u>claiming</u> <u>that</u> <u>right</u>."[13] Unlike estoppel, which requires reliance, "[w]aiver of a right results as a legal consequence from the unilateral act of the party against whom it operates [here,

---

[13] <u>First Interstate Bank, N.A. v. Interfund Corp.</u>, 924 F.2d 588, 595 (5th Cir. 1991)(citing <u>Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.</u>, 794 S.W.2d 442, 447 (Tex. App. — Corpus Christi 1990))(emphasis added).

16

MLIC], and no act of the party in whose favor it operates [here, Sondra] is necessary to complete it."[14] The party asserting waiver must show, as to the party asserting a right, "(1) an existing right, benefit, or advantage[,] (2) knowledge, actual or constructive, of its existence[,] and (3) actual intent to relinquish the right, which can be inferred from conduct."[15] "Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law."[16]

At the outset, we reject MLIC's contention that, because Texas law precludes the use of the doctrines of waiver and estoppel to create or extend insurance coverage, Sondra is prohibited from relying on waiver as a means of establishing MLIC's liability under the policy. MLIC mischaracterizes Sondra's contention. Texas, like many common law jurisdictions, adheres to the principle that "waiver . . . cannot <u>enlarge the risks</u> covered by [an existing] policy [nor can they] be used to <u>create a new and different</u> contract with respect to the risk covered and the insurance

---

[14] <u>Pioneer Oil Co. v. Vallejo</u>, 750 S.W.2d 928, 929 (Tex. App. —— Corpus Christi 1988).

[15] <u>First Interstate</u>, 924 F.2d at 595 (citing <u>Missouri-Kansas-Texas R.R. v. Heritage Cablevision of Dallas, Inc.</u>, 783 S.W.2d 273, 280 (Tex. App. —— Dallas 1989, no writ)).

[16] <u>Motor Vehicle Bd. of the Tex. Dept. of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.</u>, 1 S.W.3d 108, 111 (Tex. 1999).

extended [by an existing policy]."[17]  Texas insureds are not

prevented, however, from employing waiver to show that an insurer

has forfeited its right to assert a condition precedent in defense

of its responsibility under a putative new policy.[18]  This holds

true whether the condition precedent is actual delivery, payment of

the premium directly to the insurer as opposed to its authorized

agent, or <u>prepayment</u> <u>of</u> <u>the</u> <u>first</u> <u>premium</u>, which is the case here.[19]

Accordingly, to the extent that statements in MLIC's application

---

[17] <u>Minnesota Mut. Life Ins. Co. v. Morse</u>, 487 S.W.2d 317, 320 (Tex. 1972)(citing <u>Great Am. Reserve Ins. Co. v. Mitchell</u>, 335 S.W.2d 707 (Tex. App. —— San Antonio, 1960, writ ref'd))(emphasis added).

[18] "A condition precedent may be waived," <u>Kennedy v. McMullen</u>, 39 S.W.2d 168, 174 (Tex. Civ. App. —— Beaumont, 1931, writ ref'd), and the waiver of a condition precedent may be inferred from the party's conduct." <u>Sun Exploration & Prod. Co.</u>, 728 S.W.2d 35, 37 (citing <u>Ames v. Great Southern Bank</u>, 671 S.W.2s 447, 449 (Tex. 1984)).

[19] <u>See</u>, <u>e.g.</u>, <u>Scott v. Nat'l Bankers Life Ins. Co.</u>, 253 S.W.2d 485, 488 (Tex. App. —— San Antonio 1952, reh. d.)(insurance company may waive express condition precedent to insurer's liability under the policy); <u>United Fid. Life Ins. Co. v. Handley</u>, 53 S.W.2d 833, 838 (Tex. App. —— Amarillo 1932, reh. d.)(stipulation in insurance application limiting insurer's liability to the time when the application was made and the first premium paid "was for the benefit of the [insurer] and could be waived by it"). See also 45 TEX. JUR. 3D, INSURANCE CONTRACTS AND COVERAGE §85, §87 (Although "a provision in a policy that declares that the policy shall not become effective . . . until the premium has been paid is valid," "[t]he condition of prepayment of the premium may be waived by the insurer")(Jody L. Mikasen et al. eds., 3d ed. 1995)(cites omitted); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 12:11 (3d ed. 1996)("Since provisions requiring prepayment of premium are for the benefit of the company, they may be waived by it, with the result that the contract becomes binding without prepayment, even though the policy provides that the premium must be prepaid, either at the company's office or to an agent duly authorized in writing to receive it.")(cites omitted).

18

form and insurance policy would make prepayment of the first premium a condition precedent to commencement of coverage, that condition is susceptible of waiver.

More to the point of MLIC's mischaracterization of what Sondra seeks to accomplish, it is readily apparent that Sondra does not employ waiver to "enlarge the risks covered by [an existing] policy [or] to create a new and different contract with respect to the risk covered and the insurance extended."[20]  The policy that MLIC issued explicitly covers the risk at issue, i.e., the death of either mortgagor/insured, and extends that coverage up to the proceeds amount sought by the beneficiary, i.e., payment of the entire mortgage balance up to $300,000.

When we examine the gravamen of Sondra's waiver argument, the legal possibility that MLIC <u>might</u> be held to have waived its right to insist on prepayment of the first premium as a condition precedent to coverage becomes apparent.  MLIC might have done so when it unconditionally approved the Jenkinses' application on March 14, 2001, with an April 1, 2001 effective date, <u>prior</u> <u>to</u> <u>receiving</u> the Jenkinses' first premium payment directly, <u>and</u> in the <u>full</u> <u>knowledge</u> that –– under its arrangement with NovaStar –– the Jenkinses could not possibly have been invoiced by NovaStar for their first premium until sometime after April 9, 2001, the next of the monthly dates on which MLIC notifies NovaStar of approved

---

[20] <u>Morse</u>, 487 S.W.2d at 320.

applications.  MLIC might also have done so when it issued the policy in the full knowledge of its documents' assurances that the insureds would not need to send a separate premium check, either to MLIC with the application or to NovaStar as MLIC's agent, and that applicants would remain covered during the thirty days that they had in which to examine their policy risk free.  Simply put, because MLIC chose to adopt notification procedures that would not permit the Jenkinses (or anyone similarly situated) to comply with the policy's requirement that the first premium be paid prior to the date selected by MLIC as the effective date of coverage, MLIC might well be held to have waived the right to assert that commencement of coverage was barred by the Jenkinses' failure to pay the first premium before (1) the effective date (which was not communicated to them until April 5, 2001) or (2) Alvin's death (on April 4, 2001).  This too will depend on the results of more complete factfinding.

As a matter of law, MLIC's notification procedures might well have resulted in its assumption of the risk that it could be liable for death benefits accruing after it approved the insured's application and issued a policy, but before the insured paid the first premium —— here, the span of more than a fortnight between March 14 and April 1, 2001.  Accordingly, MLIC might ultimately be found to have waived its right to assert prepayment of the first premium as a condition precedent to coverage.  We therefore reverse the district court's grant of summary judgment to MLIC in the

20

declaratory judgment suit rejecting Sondra's claim for breach of contract, and we remand to the district court for further proceedings consistent with this opinion.[21]

C.  NovaStar's Breach of Contract

Sondra contends in her third party claim that NovaStar breached its contractual duties under the escrow agreement by failing timely to collect from the Jenkinses the initial premium on their life insurance policy and remit payment to MLIC prior to the effective date of the policy.  As discussed above, the escrow agreement "authorize[d][NovaStar] to collect monthly impounds, if applicable, in the manner detailed below [sic] to pay for taxes, insurance premiums, assessments, or other items relating to the property on [the Jenkinses'] behalf."  Although the escrow agreement expressly contemplates the escrowing of funds for "Mortgage Insurance" in addition to those for principal and

---

[21] Although we recognize that we may direct summary judgment in favor of a party who did not move for it in the district court when no disputed facts exist, see Black Warrior Elec. Membership Corp. v. Mississippi Power Co., 413 F.2d 1221 (5th Cir. 1969), we decline to do so here under the procedural history of this case. First, Sondra did not move for summary judgment on the waiver or estoppel issues in the district court.  MLIC has thus not had an opportunity – even at the summary judgment stage – to develop the evidentiary record or to brief these issues fully.  We deem it prudent to remand these issues to the district court, which may require full briefing on the issues or receive additional evidence, if any, into the record — or both.  At such a time, the district court may decide that (1) summary judgment is proper if there still exists no genuine issue of material fact, or (2) the case should proceed to a trial on the merits. We merely note that, given the procedural posture of this case and a less-than-fully developed record, we decline to resolve these issues here.

interest, property taxes,[22] and flood and fire insurance, no dollar amount was entered in the space provided for "Mortgage Insurance" when the escrow agreement was signed by the parties. Obviously, this is because the Jenkinses had not procured such insurance at the time the agreement was executed. Nevertheless, the final paragraph of the escrow agreement states

> The amount of each monthly impound to be collected is determined by [NovaStar]. The amounts are subject to adjustment from time to time. [The Jenkinses] agree to pay these modified impounded amounts along with each monthly payment of principal and interest.(emphasis added).

Sondra insists that, in timely signing the mortgage life insurance application, which expressly authorizes NovaStar "to add the premium for the Mortgage Insurance indicated above to [the Jenkinses'] mortgage payment," and delivering the application to MLIC as instructed in the MLIC documents that NovaStar furnished and is presumed to have been pre-approved, she and her husband did all that they possibly could to have the escrow amount timely "adjusted" to include mortgage life insurance premiums. Thus, she argues, NovaStar's failure to bill her and her husband for their

---

[22] We are unpersuaded by NovaStar's argument that the escrow agreement does not permit the collection of mortgage life insurance premiums because mortgage life insurance does not "relate[] to the property." Not only does the agreement expressly contemplate impounds for "Mortgage Insurance," as discussed above, but any ambiguity as to what types of insurance "relate[] to the property" must be construed against NovaStar. Indeed, a mortgage or deed of trust does not just "relate to the property," it encumbers the property as collateral security for the very obligation the balance of which the mortgage insurance is committed to pay with its proceeds.

first premium sufficiently in advance of the effective date of the policy to comply with MLIC's premium-first requirement constituted a breach by NovaStar of the escrow agreement as modified by the application for mortgage life insurance.

We agree that the express language of the application authorizing NovaStar to add the amount of the mortgage life insurance premium to the Jenkinses' monthly invoice effectively modified the escrow agreement to require the inclusion of amounts sufficient to cover mortgage life insurance premiums. Our conclusion is bolstered by the fact that NovaStar did in fact include the amount of the Jenkinses' first mortgage life insurance premium, albeit not until their April invoice, without requiring the execution of a new or superseding escrow agreement or a separate amendment. The only question remaining as to this claim, then, is whether a genuine issue of material fact exists with respect to NovaStar's alleged breach of the escrow agreement.

NovaStar insists that its failure to bill the Jenkinses for their first mortgage life insurance premium prior to the April 1, 2001 effective date of the policy cannot be construed as a breach of NovaStar's obligation under the escrow agreement, because MLIC did not notify NovaStar until April 9, 2001 that the Jenkinses' application had been approved. Although these facts are correct, we disagree with NovaStar's legal conclusion.

First, the record establishes that it was NovaStar's decision to receive monthly — as opposed to weekly or even daily —

23

notification from MLIC as to which of NovaStar's borrowers had been approved for mortgage life insurance. In her deposition, MLIC representative Colleen Gizinski stated that MLIC's notification procedures varied among the mortgage companies with which it had arrangements similar to NovaStar's, but that, ultimately, it was "up to the mortgage company" to decide how often it was to be notified by MLIC of the approval for mortgage life insurance for the lender's borrowers. Some mortgage companies, at their request, received weekly or daily notification from MLIC, but NovaStar requested to be notified only once each month. NovaStar points to no evidence that would contradict this testimony.

Moreover, MLIC's and NovaStar's cavalier treatment of such notification establishes the fault of both defendants. MLIC's permitting its mortgage guarantor/agent to select notification procedures as dilatory as once per month, and NovaStar's equal disregard for the interests of its borrowers (and, presumably, with considerable regard for the reduction of its own workload) inures to the detriment of each.

Second, as MLIC's agent for the collection of premiums, NovaStar is deemed to know the contents of both the policy and the application, as well as the contents of the brochure and cover letter that NovaStar itself promulgated. Thus, NovaStar is held to have had knowledge of the policy's requirement that the first

premium had to be paid prior to the effective date of insurance.[23] Indeed, NovaStar not only transmitted all these documents to its borrowers, it had the legal right to review and approve (or disprove) the documents prepared and proffered by MLIC before NovaStar promulgated them to its borrowers. NovaStar cannot be heard to claim ignorance of the contents of those papers.

Accordingly, NovaStar's decision to implement notification procedures that were obviously flawed to the extent of unnecessarily delaying receipt of information from MLIC as to which of NovaStar's borrowers had been approved for MLIC mortgage life insurance — undoubtedly until <u>after</u> the effective date of that

---

[23] NovaStar's contention that it is not MLIC's agent for collection of premiums under the Texas Insurance Code is meritless. Under § 4001.051, an entity is the agent of the insurer if it: "(1) solicits insurance on behalf of the insurer; (2) receives or transmits other than on the person's own behalf an application for insurance or an insurance policy to or from the insurer; (3) advertises or otherwise gives notice that the person will receive or transmit an application for insurance or an insurance policy; (4) receives or transmits an insurance policy of the insurer; . . . (6) receives, collects, or transmits an insurance premium . . . ." TEX. INS. CODE ANN. § 4001.051(b)(1)-(4), (6). As the terms of NovaStar's Mortgage Insurance Agreement with MLIC require NovaStar both to solicit insurance on behalf of MLIC by mailing MLIC insurance applications and advertisements to its borrowers and to "provide the facility for payment of the required premium," NovaStar is indisputably MLIC's agent for these acts under § 4001.051(b). Further, NovaStar's argument that it is excepted from agency status under § 4001.051(d) is equally meritless, as that provision applies only to the referral of customers to an insurance <u>agent</u>, not to an insurer such as MLIC. TEX. INS. CODE ANN. § 4001.051(d) ("The referral by an unlicensed person of a customer or potential customer to an agent is not an act of an agent under this section, unless the unlicensed person discusses specific insurance policy terms or conditions with the customer or potential customer.").

insurance had already passed, in many instances — raises the genuine fact issue whether NovaStar breached its obligation under the modified escrow agreement to collect and bill the Jenkinses timely for their mortgage life insurance premiums.  We hold that the district court erred in granting summary judgment in favor of NovaStar, rejecting Sondra's claim against it for breach of contract, and we remand this issue for further consistent proceedings.

F.  <u>NovaStar's Breach of Fiduciary Duty</u>[24]

NovaStar's billing and notification procedures also form the basis of Sondra's claim against her lender for breach of fiduciary duty.  Specifically, Sondra asserts that NovaStar owed her and her husband fiduciary duties, arising out of its dual role as (1) their agent "for purposes of the collection and processing of [premium] payments" and (2) MLIC's "insurance agent/collection agent" for procuring mortgage life insurance and collecting and remitting payment of premiums "in a manner as to ensure effective coverage." She argues that NovaStar breached these duties by employing faulty billing and notification procedures with the result that the Jenkinses (and, presumably, many of NovaStar's other borrowers) were left uninsured for many days after the effective date specified in the policy.  As we find that NovaStar did not owe a fiduciary duty

---

[24] Although Sondra has styled her cause of action against NovaStar as one for negligence, it is readily apparent that the substance of her claim is for breach of fiduciary duty, so we treat it is as such on appeal.

to the Jenkinses, however, her claims grounded in such duties were properly dismissed on summary judgment.

Texas courts have recognized that, under some narrow sets of circumstances, an insurance agent may be deemed to have acted as the agent of both the insured and the insurer.[25] The evidence in the record of this case, however — in particular, the Mortgage Insurance Agreement — makes clear that at all relevant times NovaStar was acting exclusively as MLIC's agent for the solicitation of insurance customers and the collection and remission of MLIC's mortgage life insurance premiums, and not as agent of the Jenkinses, much less as their fiduciary. The cases cited by Sondra in support of her contention that NovaStar acted in dual capacities for both MLIC and the Jenkinses are readily distinguishable. Not only was it the insureds in the cited cases who solicited the agents to obtain insurance coverage on their behalf — the obverse of the instant situation — but the insurance agents themselves were responsible for completing the applications and, after issuance, delivering the policies to the insureds.[26] As no agency

---

[25] See, e.g., Essex Ins. Co. v. Redtail Prods, Inc., No. Civ. A. 3:97CV2120D, 1999 WL 627379, at *2 (N.D. Tex. Aug. 17 1999); Maintain, Inc. v. Maxson-Mahoney-Turner, Inc., 698 S.W.2d 469, 472 (Tex. App. — Corpus Christi 1985, reh. d.).

[26] See, e.g., Essex, 1999 WL 627379, at *2 (insured contacted agent to procure commercial general liability policy and agent prepared and submitted application to insurer on insured's behalf); Maintain, 698 S.W.2d 469, 472 (Tex. App. — Corpus Christi 1985, reh. d.)(insured and agent entered contract whereby agent undertook to secure insurance coverage on behalf of insured and insured agreed to reimburse agent the amount of the premiums).

27

relationship existed between NovaStar and the Jenkinses with respect to obtaining coverage or collecting and remitting premiums, any argument that NovaStar breached fiduciary duties allegedly arising out of this relationship misses the mark.

Neither does the escrow agreement or the Deed of Trust give rise to a fiduciary duty owed by NovaStar to the Jenkinses. Neither of these contracts expressly impose a duty on NovaStar to procure mortgage life insurance for their borrowers. And, the courts of Texas have left no doubt that the mere "[p]ayment of funds by the mortgagor into an escrow account for the mortgagee's use to meet tax and insurance obligations on the property as they accrue does not create a trust or fiduciary relationship under Texas law."[27]

Finally, we agree fully that, as a matter of law, NovaStar was MLIC's agent for the solicitation of applications and the collection and remission of premiums, and we reject out of hand Sondra's unsupported assertion that this agency relationship somehow gave rise to a fiduciary duty on the part of NovaStar in favor of her and her husband. Accordingly, we affirm the district court's grant of summary judgment rejecting Sondra's claims against NovaStar for negligence cum breach of fiduciary duty.

G. <u>Texas Insurance Code and DTPA Violations</u>

---

[27] <u>White v. Mellon Mortg. Co.</u>, 995 S.W.2d 795, 801 (Tex. App. — Tyler 1999)(citing <u>Wesson v. Jefferson Sav. & Loan Ass'n</u>, 641 S.W.2d 903, 905 n.2 (Tex. 1982)).

Sondra also claims that MLIC and NovaStar engaged in unfair and deceptive practices under Article 21.21 § 4(1) of the Texas Insurance Code[28] and §§ 17.46(b)(12)[29] and (24)[30] of the DTPA by representing to potential applicants, in the promotional materials and the application form, that in every instance the applicants would enjoy a thirty-day "risk free" period during which they could (1) examine the policy and accept or reject it,[31] (2) remain covered by the insurance while they considered these options, and (3) owe nothing if they timely rejected coverage.  To this end, she

---

[28] Article 21.21 §4(1), "Misrepresentations and False Advertising of Policy Contracts," proscribes, inter alia, the making or issuing of any statements representing the terms of any policy "or the benefits or advantages promised thereby." TEX. INS. CODE ANN. § 21.21 4(1)(Vernon's 1981 & Supp. 2004).

[29] Section 17.46(b)(12) of the DTPA makes it unlawful for any person to "represent[] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." TEX. BUS. & COMM. CODE ANN. § 17.46(b)(12)(Vernon's 2002 & Supp. 2004).

[30] Section 17.46(b)(24) makes it unlawful for any person to "fail[] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed." TEX. BUS. & COMM. CODE ANN. § 17.46 (b)(24)(Vernon's 2002 & Supp. 2004).

[31] As an additional ground for establishing MLIC's and NovaStar's liability under the Insurance Code and DTPA, Sondra advances that the promotional materials are deceptive in that they assure the applicant that "no separate checks are required" and expressly provide that the first premium payment "will be added" to the applicant's monthly billing statement from NovaStar.  Because this argument was not made in the district court as a basis for finding either MLIC or NovaStar liable under the Insurance Code or the DTPA, however, it is waived.

29

maintains that, if enforced, MLIC and NovaStar's monthly billing and notification procedures, coupled with the application and policy provisions that coverage would begin only after the first premium is paid, would render the thirty-day period "meaningless." This is so, asserts Sondra, because in most cases the thirty-day period will have expired (or almost expired) by the time (1) MLIC notifies NovaStar of MLIC's approval of the applicant for mortgage life insurance and (2) NovaStar bills its borrower and receives the premium from its borrower.

In an effort to support this argument, Sondra has offered evidence that the thirty-day period runs from the effective date of the policy, rather than the date of payment of the first premium or the date of the insured's receipt of the policy. In the Jenkinses' case, the effective date specified in the policy was April 1, 2001, four days prior to Sondra's actual receipt of the policy on April 5, 2001 and three days before Alvin's death on April 4, 2001. NovaStar did not bill Sondra for the amount of the first premium until April 10, 2001, one day after being notified by MLIC of its approval of the Jenkinses; and Sondra timely submitted her premium payment by virtue of the premium amount's inclusion in the NovaStar invoice of April 10, 2001, which Sondra timely paid on April 26, 2001. Under the interpretation of the terms of the policy advanced by MLIC and NovaStar, coverage would not begin until MLIC (or NovaStar as its agent) received Sondra's first premium payment, which could not have been until some time after she mailed it

30

following receipt of NovaStar's invoice dated April 10, 2001 and received later by Sondra. Yet, by that time, only a fraction of the promised thirty days following the effective date of the policy remained, meaning that the purported "risk free" period was too short to be meaningful.

MLIC and NovaStar offer nothing that would be effective to refute Sondra's characterization of the thirty-day period. Instead they cling to the argument that the fine print above the applicants' signature line on the application, purportedly informing the applicants that the first premium is absolutely necessary to effectuate coverage, prevents these representations from being either deceptive or misleading. In light of the obscure nature of this statement, however, we find that reasonable jurors could differ as to whether it effectively communicates to the applicant that he will <u>not</u>, in fact, be "fully covered" during the entire thirty-day examination period — even when, for all practical purposes, it has elapsed — <u>unless</u> he has paid his first premium. This is especially so when it is remembered that this statement must be viewed in context with all other documents and timing issues. For example, in references to the 30-day risk-free examination period, the cover letter and the brochure employ the future tense regarding payment of the initial premium.[32]

_____

[32] The cover letter states that "[i]f you decide you don't want the coverage, for any reason, just return the Certificate to Monumental Life Insurance Company and you'll [future tense] owe nothing." Further, the brochure provides that "[i]f you don't

31

We are satisfied that Sondra has raised a genuine issue of material fact as to whether, in violation of § 17.46(b)(12), MLIC and NovaStar represented to her and her husband that the insurance agreement "confers a right which it does not have," i.e., a full thirty-day "risk free" trial period during which they would be fully covered. We are likewise satisfied that she has raised a genuine issue of material fact as to whether, in violation of § 17.46(b)(24), MLIC and NovaStar failed <u>adequately</u> to disclose information concerning the policy that they knew or should have known was crucial to the potential insured's decision to apply or not apply for coverage, with the intent of inducing the Jenkinses to purchase the insurance.

Finally, we conclude that Sondra has raised a genuine issue as to whether these purported misrepresentations were "a producing cause of her injury,"[33] viz., were it not for these confusing and misleading statements and omissions, would Sondra and Alvin have been likely to know that they needed to take additional steps to bring coverage into effect? Accordingly, we reverse the district court's grant of summary judgment in favor of MLIC and NovaStar on

---

agree that this is sensible and affordable mortgage protection, simply return it within 30 days and you won't [future tense] owe a cent."

[33] To prevail on her DTPA claims, Sondra must show that (1) she is a consumer, (2) MLIC and NovaStar engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of her damages. <u>See</u> <u>Celtic Life Ins. Co. v. Coats</u>, 885 S.W.2d 96, 99 (Tex. 1994).

these statutory claims, and remand for further proceedings consistent with this opinion.

## III. CONCLUSION

A. We reverse the district court's grant of summary judgment dismissing Sondra's breach of contract claim against MLIC, and we remand to the district court for further proceedings consistent with this opinion.

B. As to whether NovaStar breached its contractual obligation under the escrow agreement timely to collect and remit payment for mortgage life insurance premiums, we hold that Sondra has established the existence of a genuine issue of material fact. We therefore reverse the district court's grant of summary judgment in favor of NovaStar on this claim, and we remand for further consistent proceedings.

C. We conclude that Sondra has established the existence of a genuine issue of material fact as to her claims against MLIC and NovaStar for violations of the Texas Insurance Code and the DTPA. We therefore reverse the district court's grant of summary judgment as to these claims, and we remand for further consistent proceedings.

D. As for Sondra's negligence cum breach of fiduciary duty claim against NovaStar, we hold that, as a matter of law, NovaStar owed no fiduciary duty to Sondra or her husband. We therefore affirm

33

the district court's grant of summary judgment in favor of NovaStar dismissing that claim.

AFFIRMED in part; REVERSED and REMANDED in part.

EDITH H. JONES, Circuit Judge, specially concurring in part and dissenting in part:

Because no one anticipates the tragedy of unexpected death, the commencement date of a mortgage life insurance policy is ordinarily of little importance. Here, Mr. and Mrs. Jenkins each signed a statement in their insurance application that they understood no insurance was effective until the application was approved and <u>the first premium was paid</u>. The majority repeatedly refer to this statement as "fine print," but it is no less a part of the contract, and it appeared just above the applicants' signature lines. The district court applied the literal terms of the application, the cover letter and the insurance policy itself, all of which were consistent on this point.

Notwithstanding these facts, other language in the policies' promotional materials, and contract documents, and Novastar's payment handling procedures muddy the picture concerning the policy's effective date. In occasionally caustic terms, the majority overturns the district court's grant of summary judgment and reverses for trial on multiple causes of action. Unlike the majority, I do not find in the circumstances of this case an occasion for condemning the defendants' practices so much as for sorting out the confusion that existed between the defendants' handling of mortgage life insurance applications and the provisions

35

specifying when and how the necessary first premium payments would be made.

Because of the confusion, I agree that a fact issue exists as to whether Monumental waived its requirement that the first premium must be paid before the thirty-day risk-free effective period of the insurance commenced. There is also a valid question whether Novastar, having transmitted the insurance offer to mortgagors and agreed to be the servicing agent for collection of premiums, owed the Jenkinses a contractual obligation in regard to the payment of the first premium and prompt commencement of the policy.

The facts before us do not, however, support causes of action for estoppel under Texas law, or for violations of the Texas Insurance Code or the DTPA. Texas law defines estoppel as "conduct which causes the other party to materially alter his position in reliance on that conduct." Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988). The evidence does not show that the Jenkinses relied on these defendants' alleged miscon-duct to their detriment. They knew after receiving the March 14 acceptance letter that "the certificate of mortgage life insurance should arrive shortly." They also knew, from the application they signed, that coverage would not be in effect until the first premium was paid and that they would not receive their next Novastar billing statement until on or about April 10. They did not know that the effective date of the policy would be April 1,

36

2001.  They could have elected to make the first insurance payment any time after they received notice of approval, or they could have (and did) risk waiting for Novastar's April 10 invoice.  In neither event did they rely at all on the policy's becoming effective prior to payment of the first premium.  The majority cites no Texas caselaw to support its conclusion.

As for the Texas statutory causes of action, I would hold that even if there was undue confusion about the effective date of the policy and mechanism for paying the first premium, the Jenkinses were not misled or injured under the terms of those statutes.  The majority complains that Novastar's actual billing practices may have meant that Ms. Jenkins might have "only a fraction of the promised thirty days" risk-free trial period available to her, a period "too short to be meaningful."  The majority misunderstands the thirty-day risk-free feature of the policy.  Risk-free does not mean cost-free.  Taken in context of all the documents, this means <u>only</u> that a policyholder, having complied with the requirement to pay the first premium as a condition of policy coverage, could receive a refund of the premium for the first thirty days.  (The documents accordingly said that if the coverage was then dropped, "your account will be <u>credited</u>. . . .").  The overall operation of the program was confusing, but the defendants neither misled nor concealed its provisions.

Finally, it should be emphasized that although the majority casts its interpretation of the facts in the light most

37

favorable to Ms. Jenkins, as it should at this juncture, formal factfinding is still necessary.

With due respect, I concur only in the judgment authorizing remand to proceed with Ms. Jenkins's waiver claim against MLIC and breach of contract claim against Novastar.